### HILDRETH v. LAUER & SUTER CO.

(District Court, D. Maryland. May 5, 1913.)

PATENTS (§ 328*)—VALIDITY—CANDY-PULLING MACHINE.

> The Hildreth patent, No. 832,384, for a candy-pulling machine, claim 4, is void, as broader than the invention, being in effect for any means of accomplishing a particular result.

In Equity. Suit by Herbert L. Hildreth against the Lauer & Suter Company. On final hearing. Decree for defendant.

William A. Macleod and George P. Dike, both of Boston, Mass., for complainant.

Richard B. Tippett and E. Walton Brewington, both of Baltimore, Md., for defendant.

ROSE, District Judge. The defendant is a manufacturer of candy. It owns and uses a candy-pulling machine. Plaintiff says that such machine infringes claim 4 of his letters patent No. 832,384, October 2, 1906. That claim is for:

"A candy-pulling machine comprising means for supporting the candy against gravity, means for pulling the candy, and means for producing a relative in-and-out motion of said supporting and pulling means."

Construed literally, this claim covers every candy-pulling machine in which the candy is pulled while supported against gravity, and in which there is a relative in-and-out motion of the supporting and pulling parts of the machine.

In defendant's machine the candy is supported against gravity, but defendant says there is no relative in-and-out motion of the supporting and the pulling members, because the supporting member is stationary, and therefore does not move at all. Dictionary definitions are cited. From these it is argued that there can be no relative in-and-out motion, except among things all of which move. Into such discussion it is not necessary to go. The specifications of the patent in suit make plain the sense in which the words "relative in-and-out motion" are there used. The patent says:

"The relative in-and-out motion of the candy-puller and the candy-hooks may be realized by moving either the candy-puller or the candy-hooks, or both, and the mechanical devices by which this relative motion is accomplished are not essential to the invention."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Such use is not peculiar to the plaintiff, Hildreth. In the machine of the prior Dickinson patent, No. 831,501, a specified relative in-and-out motion is made an essential element. It is, nevertheless, therein pointed out that some of the parts may be stationary and some movable, or all movable, without affecting the operation of the device. The construction which defendant seeks to put upon the claim in suit is therefore too narrow.

In defendant's device are to be found means for supporting the candy against gravity, means for pulling the candy, and means for producing a relative in-and-out motion of the supporting and pulling means. In short, the fourth claim of the plaintiff's patent may be read upon defendant's construction. If the former is valid, the latter infringes.

Defendant says that the patent in suit, and particularly the claim in question, is invalid. For this conclusion it assigns various reasons. It says that complainant's device was anticipated by a machine rep·resented on page 125 of the Engineer's Sketch Book, second edition, 1890. The construction there shown was intended for mixing or incorporating. To fit it to pull candy, some changes and adaptations of it are required. It can be so modified that it will pull candy with greater or less efficiency; but nobody who had not already found out how candy could be pulled by machinery would know how to alter the machine in the Engineer's Sketch Book in order to turn it into a candy-puller.

A skilled machinist would doubtless be able to do the mechanical work of building outright any machine, if he knew in advance precisely what kind of machine it was to be. Instead of making an altogether new machine, it might sometimes be cheaper and quicker to alter an old one. Before he could make such changes, he would have to know how he wanted the machine to work. So far as I can see, there was nothing in the Engineer's Sketch Book which would have told anybody how candy could be pulled by machinery, unless he already knew it.

For nine years after that publication was on the market nobody did find out how to make a machine which would pull candy. In the language of the Supreme Court:

"This very fact is evidence that the man who discovered the possibility of [its] adaptation to this new use was gifted with the prescience of an inventor." Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586.

For very much the same reasons it is unnecessary in this connection to consider any of the prior patents cited by the defendant, with the single exception of No. 831,501, granted Dickinson September 18, 1906.

Candy-pulling is an old industry. To pull by hand,is hard. To do it well and on a commercial scale requires a good deal of manual strength, as well as some dexterity. If machinery is not used, the candy must be much handled. Many who eat candy would prefer that other's people's hands should be kept off of it as much as possible. In this country in recent years the consumption of candy, and, indeed,

of almost all food products of which sugar is a large constituent element has greatly increased.

For some reason about 1899 a number of inventors in different parts of the country busied themselves to find out a way of pulling candy by machinery. They appear to have had no means of learning what the others were doing; but, as frequently happens, they all about the same time found out what was the essential principle upon which an effective candy-pulling machine must work. The practical embodiment of this principle took different forms in different minds. Some of the machines were doubtless much better fitted to the conditions of actual use than others. Quite a number of these inventors made applications for patents. Interferences were declared among them. In the end priority was adjudged to one Dickinson, and the patent, No. 831,501, already mentioned, was issued to him September 18, 1906.

The Dickinson machine, like all the others, pulls the candy by giving a relative in-and-out motion to a plurality of pins. Dickinson uses three, one of which is stationary. He says, in effect, that their number is not important, as he speaks of them as a series of pins or hooks. He adds:

"I have also illustrated and described a stationary hook or pin and two traveling shifting pins; but I do not wish to be understood as limiting my invention to such an arrangement, since my invention could be applied in a device where the candy-hook moves back and forth, and where the pins and hooks, although having a shifting action, are relatively stationary. In either case the candy is acted upon in a manner and by means of the shifting hook along a path corresponding to what I term a figure 8."

So far as this record discloses, Dickinson was thus the first to find out the principle upon which an effective candy-pulling machine must operate. In that field Dickinson is a pioneer. Yet defendant says that Hildreth's fourth claim is broader than any of the Dickinson claims. In this connection defendant points out that during the pendency of the interference proceedings Hildreth bought Dickinson's rights. When the two patents were issued, the plaintiff owned both. Defendant suggests that under such circumstances the wording of the claims may not have received that critical attention from the Patent Office officials which might otherwise have been given them. Into such speculations the courts may not enter, nor is there any reason why they should. Upon the records before them they must determine for themselves whether any particular claim in suit is valid or not. In reaching their conclusion they will give due weight to the presumption in its favor raised by its allowance by the Patent Office.

If the defendant is right in saying that the junior patent has been given the broader claim, the case is necessarily at an end. The broadest claim of the Dickinson patent is the first. It is for:

"A candy-pulling machine comprising a plurality of oppositely disposed candy hooks or supports, a candy-puller, and means for producing a specified relative in-and-out motion of these parts for the purpose set forth."

The combination claimed is made up of three elements. There is the same number in that described in the fourth claim of the Hildreth

patent. The second element in each may be taken to be the same. In the Dickinson patent it is described as a candy-puller; in the Hildreth, as means for pulling candy. While the language in which this element is described in the patent in suit has a broader sound than that employed in the Dickinson patent, they probably mean about the same thing. Anything that will pull candy is doubtless a candy-puller.

The first element of the Dickinson combination is a candy-pulling machine comprising a plurality of oppositely disposed candy-hooks or supports, and the third is means for producing a specified relative in-and-out motion of the hooks or supports and the candy-puller for the purposes set forth.

The third element of the Hildreth claim is a means of producing a relative in-and-out motion of the supporting and pulling means. As was said in comparing the second element of the two claims, the language employed in describing the third element in the Hildreth claim suggests a more wide embracing signification than that used by Dickinson. It may be said, however, that this difference is more in seeming than in reality, and that in point of fact these statements are the same in the claim of each patent.

The plaintiff says that the first element of his claim is more restricted than that of the Dickinson claim. Any candy-hooks or supports will serve for the first element of the Dickinson claim. No devices, whether they be hooks, supports, or anything else, will answer the description of the first element of the Hildreth claim, unless they are capable of supporting the candy against gravity.

Plaintiff says that his invention consists in utilizing the hooks or supports of Dickinson's combination so as to support the candy against gravity. He argues that the requirement that his hooks or supports shall serve this purpose makes his claim more limited in effect than that of the Dickinson patent, no matter how general its language may seem to be. For the purposes of this case the plaintiff's position in this matter may be assumed to be correct.

Dickinson and everybody else, of course, knew that the candy, while being pulled, had to be supported against gravity. For this purpose Dickinson supplied a trough in which his pulling machinery operated. In his patent he said:

"I have also shown in the drawings a trough for supporting the candy, but any suitable support may be used which has the capacity for supporting the candy while it is being operated upon."

Plaintiff's contribution to the art, so far as it is covered by the fourth claim of his patent, is confined to the utilization of the hooks of the Dickinson patent for the purpose of supporting the candy against gravity. This claim, giving it the construction most favorable to its validity, is for all means by which in a candy-pulling machine candy is supported against gravity and in which there is a relative in-and-out motion of the supporting and pulling means.

So construed, the defendant contends that the claim is far broader than the invention actually made by the plaintiff, and is so broad that the claim is for a function or the operation of a machine.

Plaintiff can be hardly said to be the first one to whom the idea occurred that the hooks which pull the candy might also support it. Dickinson in his patent expressly refers to his hooks as supports. They do not, however, in the Dickinson design afford any special support to the candy. The language used by him, however, strongly suggests that he thought it was possible they might be so employed. Any one who looked at a Dickinson machine would see that it was very desirable that the hooks or pins which pulled the candy should support it against gravity. Dickinson did not know how this could be done. The question in this case is not whether to find a way of doing it required the exercise of inventive genius, but whether a man who found out one way of doing it would thereby acquire an exclusive right to any and all ways.

In Hildreth's machine the candy is supported against gravity by the same means which pull it. His machine is, however, large, cumbersome, and space-consuming. It will work. It never was put to actual commercial operation on any appreciable scale until after the institution of this suit. It was then taken out of the room in which it had been stored, and again set up and put into daily use. It will pull candy. If a manufacturer has such a machine actually set up on his premises, he can use it and get fairly satisfactory results from it. Still no one who could get one of the machines that were invented only a few months after Hildreth devised his would want one of the latter.

The fourth claim of the patent in suit can be read on the alleged infringing device; but that is true simply because the wording of that claim is exceedingly broad. Both of them pull the candy on essentially the same plan as that described by Dickinson. In each of them, as in his, the candy is made to move along a path corresponding to the figure 8. They both differ from the Dickinson machine in the respect that each of them uses its pulling and holding pins to support the candy against gravity, but the way in which they give this support is quite different.

The important respects in which the machines are alike are the respects in which each are like that of Dickinson. They are about as unlike each other in the other respects as any two machines could be in which the portions of the machines which support the candy against gravity and the pulling portions have a relative in-and-out motion. That is only another way of saying that the defendant infringes only because plaintiff's claim is broad enough to cover every way of doing something which, before he did it, everybody recognized to be a desirable thing to do. He was the first to do it, but his being the first to do it gave him nothing more than a claim to the exclusive right to do it in substantially the way he did it. It did not justify him in claiming the right to shut all others out of every other way of doing it, whether suggested by his discovery or not.

It is not always easy to say when a claim is functional. It is not always necessary. A claim for a function of a machine cannot be sustained. Westinghouse v. Boyden Power Brake Co., 170 U. S.

537, 18 Sup. Ct. 707, 42 L. Ed. 1136. It is hornbook law that a claim which covers more than the patentee really invented is invalid.

Plaintiff's fourth claim appears to be for any way of accomplishing a particular result. If it is, it would appear to be a claim for a function or an operation of a machine. In any event it claims very much more than the plaintiff invented. In either case it must be held invalid.

It was not alleged in argument that defendant infringed any other of the claims of the patent in suit. Some of those claims can be read upon defendant's device. So to read them, however, requires a construction of them which would invalidate them, for the same reasons which have been found fatal to the validity of the fourth.

In view of the conclusion which has been reached, it is unnecessary to consider the other defenses set up.

In an oral and unreported opinion, Judge Maxey, in the Western district of Texas, upheld the validity of the fourth, fifth, sixth, seventh, eighth, fifteenth, and sixteenth claims of the Hildreth patent. His opinion does not appear to have been taken down, or at all events has not been reported or brought to my attention. I regret that I have not had the benefit of his reasoning.

I will sign a decree dismissing the bill, at the cost of the complainant.