## HILDRETH v. LAUER & SUTER CO.

(District Court, D. Maryland. November 15, 1913.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—CANDY PULLING MACHINES.
  The Dickenson patent, No. 831,501, for a candy pulling machine, claim 1, is for a pioneer and basic invention and is neither for a function nor broader than the invention; also, *held* infringed. Claim 2 *held* valid but not infringed. The Jenner patent, No. 804,726, also for a candy pulling machine, *held* invalid as to claim 1, as too broad, but valid and infringed as to claims 7 and 8.

In Equity. Suit by Herbert L. Hildreth against the Lauer & Suter Company. On final hearing. Decree for complainant.

See, also, 204 Fed. 792.

Macleod, Calver, Copeland & Dike and George P. Dike, all of Boston, Mass., and Steuart & Steuart and Edwin F. Samuels, all of Baltimore, Md., for complainant.

Richard B. Tippett and George W. Lindsay, both of Baltimore, Md., for defendant.

ROSE, District Judge. The plaintiff says the defendant infringes in the aggregate five claims out of a much larger number contained in two patents owned by him. These patents are for candy pulling machines. In the last few years the candy pulling industry has been revolutionized. · Prior to the beginning of this century candy was always pulled by hand. In factories that operation is now performed by machinery. One small and simple machine will do the work of ten men and will do it better than they can. Out of a less expensive grade of sugar the machine will make a more attractive and salable candy. The machine made product is more sanitary because its method of manufacture has been far more cleanly.

The plaintiff owns patents which purport to cover the essential features of all the machines now in use. Whether these broad claims are valid is therefore of great importance not only to the parties to this suit but to the trade generally. The plaintiff has more than 300 machines out on lease and license at an annual rent of $250 each. The record does not tell what it costs to build one of them. It may be fairly inferred, however, from what is stated, that a single year's rent will repay all the money laid out in construction and will leave a satisfactory and perhaps a handsome profit. Large as is the plaintiff's income from these royalties, his licensees, if his patents are valid, have no cause to complain. A human candy puller is paid about $14 per week. The weekly wages of ten of them would aggregate $140. One of them can tend two or three machines. At $250 per annum the weekly rental of a machine is something less than $5. Where only one machine is in use, its rental and the wages of the operator foot up $19 per week, as against a wage bill of $140 when the same amount of candy is pulled by hand. Doubtless there are other ·features to be considered. In practice the economies from the use of the machine may not be so great as this record would indicate. Nevertheless, after

all possible deductions have been made, they must still be relatively large.

In considering the validity of the claims in suit, it will be necessary to refer to four other patents, making thus six in all, of which mention must be made. Applications for all these were at one time simultaneously pending in the Patent Office. As they were originally presented, every one of them contained one or more claims which the Examiner held to be in interference with all the others. In some instances the applicants withdrew the broad claims which were said to be in conflict with those of the other inventors, and accepted patents which covered merely the special types of machines designed by them. In other cases the question of priority was, after a more or less prolonged contest, determined by the Patent Office. Two of the applicants carried the struggle clear to the Court of Appeals of the District of Columbia. The respective dates at which the patents were applied for, still less the dates of their issue, do not show their relative legal priorities. It so happens, indeed, that the first patent to come out of the office is the last in right.

It will be worth while to arrange these six patents in the order in which in law they rank.

| Rank | Inventor | Number | Date of Issue |
|------|----------|--------|---------------|
| 1 | Dickenson | 831,501 | Sept. 18, 1906 |
| 2 | Hildreth | 832,384 | Oct. 2, 1906 |
| 3 | Jenner | 804,726 | Nov. 14, 1905 |
| 4 | Thibodeau | 736,713 | Aug. 11, 1903 |
| 5 | Robinson | 881,442 | March 10, 1908 |
| 6 | Henry | 731,681 | June 23, 1903 |

Each of these patents will be hereafter referred to by the name of the inventor for whose invention it was granted.

There was one idea which was common to all these applications as they were first presented. It was formulated by the Patent Office in the following claim:

"A candy pulling machine comprising a plurality of oppositely disposed hooks or supports, a candy puller, and means for producing a specified relative in and out motion of these parts for the purpose specified."

As Dickenson was the victor in the interference proceedings, this claim was awarded to him. It constitutes the first claim of his patent and is the more important of the two claims of that patent in suit in the pending case. The relative in and out motion referred to was accurately described by Dickenson in his application as one which would cause the candy to move along a path corresponding to the figure 8.

The Patent Office was right in finding this feature in every one of the six applications. It was the basic principle common to all of them. It made every one of them a more or less operative machine for pulling candy. No earlier attempt to invent a candy puller had made use of it. Without it the prior art was destitute of any machine which had any value either as a candy puller or as a suggestion of how a useful one might be constructed. So soon as it was discovered progress was rapid.

In a previous case between the same parties now before the court, and in which suit was brought upon the Hildreth patent, it was said (204 Fed. 792) that the various inventors heretofore mentioned "apparently had no means of learning what the others were doing." In that case the file wrappers in the various interference proceedings were not in evidence. They now are. Circumstances disclosed by them strongly suggest the possibility, if not the probability, that most, if not all, the applicants, other than Dickenson, before they perfected their inventions or filed their applications, had either seen his machine or a description of it.

Dickenson before applying for a patent advertised his machines for sale. The plaintiff was then a candy manufacturer, as he still is. He saw how valuable a really effective candy puller would be. He made prompt application for a patent for one of his own devising. He subsequently purchased Jenner's invention, even before a patent for it was applied for. During the prolonged interference proceedings between Dickenson and the plaintiff as assignee of Jenner, the invention of the former had passed, together with those of Thibodeau and Robinson, into the hands of third parties. When the Court of Appeals of the District of Columbia awarded priority to Dickenson, the plaintiff purchased the inventions of Dickenson, of Thibodeau, and of Robinson. When the Dickenson, the Hildreth, the Jenner, and the Robinson applications passed to issue, they all belonged to the plaintiff. He at that time owned the Thibodeau patent, which had been previously issued.

Dickenson had vindicated his claim to having been the first discoverer of the basic principle and the first person to reduce it to practice. It was he who had found out that a combination of a candy puller and a plurality of oppositely disposed candy hooks or supports could be given a relative in and out motion which would carry candy along a figure 8 pathway, and that candy could thereby be pulled.

For practical use his machine had a number of shortcomings. Some of them were serious. One of the gravest of these was that the candy had to be dragged along a trough, because the trough was the only means by which in it the candy could be supported against gravity. Dickenson apparently had the idea that his pins or hooks would also serve the purpose of supports to the candy. In his machine, however, they did not to any useful extent do so. Hildreth devised one in which they would. The latter asked for, and in his patent was given, a claim broad enough to cover every machine in which Dickenson's fundamental discovery was embodied and in which the pullers or hooks supported the candy against gravity. His machine was for commercial use a great step beyond that of Dickenson. It, nevertheless, from a practical standpoint, left much to be desired. His pins or hooks or supports were perpendicular. Two of them projected from the bottom of the machine upwards. The third was a long pendulum like contrivance which hung down from above. The machine was cumbersome and space consuming. For a short while after a batch of candy was put upon it, the support given by it against gravity was imperfect.

Jenner's contribution to the art was the discovery that the pins, hooks, or pullers could be so arranged that they would project from the frame of the machine in a horizontal direction. One of them could be stationary as one of them in Dickinson's machine was. The movement of the others would, as in Dickenson's give the required relative in and out motion. Such a machine would support the candy at all times. It could be more compactly constructed than that of Hildreth and apparently with fewer and less expensive parts.

The broad claim of Jenner's patent is one of those here in suit. It is for "a candy pulling machine comprising horizontally-disposed stationary supporting means and a plurality of pulling means."

The alleged infringing device in this case is constructed in accordance with the disclosures of the Henry patent. That patent was the last of the six to be applied for. When an interference was declared between its original claims, or some of them, and those of the other applicants, Henry canceled such of his claims as were said to conflict with those found in other pending applications. He said at that time in his formal communication to the Patent Office that he directed the cancellation "with a view of avoiding a long and expensive proceeding which he was financially unable to stand." He added that "he thus limits his claims to his particular type of double acting machine so that he might obtain his patent for his precise species." In this machine there is a horizontally disposed support and a plurality of oppositely disposed hooks or pins which, having among themselves and the stationary support a relative in and out motion, pull the candy along a figure 8 pathway and at the same time support it against gravity.

If the broad claims of the Dickenson and Jenner patents, already quoted, and the fourth claim of the Hildreth patent, are valid and are to be construed according to the more natural import of their language, Henry infringes all of them. Henry, by declining to go into interference, obtained his patent with its limitations years before those of Dickenson, Hildreth, or Jenner emerged from the office. His assignees at once went into the business of making and selling machines. Quite a large number were in use in various parts of the country before Hildreth was in a position to take any legal proceedings. When he finally obtained his patents, he began, or threatened to begin, suits against both the makers and the users of the Henry machines. The then owners of the Henry patent thereupon agreed to assign it to Hildreth. He paid them some thousands of dollars for it. Stipulation was made that he would release all of his claims against those who had used machines sold them by his assignees, provided, however, that such users surrendered the machines they had to him. The surrenders were to be made upon terms which, from his standpoint and upon the assumption that the broad claims of his patents were valid, were fair enough. The defendant, however, refused to accept them or to cease using a Henry machine of which it had become the owner. Plaintiff sued it for infringing the fourth claim of the Hildreth patent. In this court that claim was held invalid (204 Fed. 792) and his bill dismissed. He appealed. The case is now pending before the Circuit Court of Appeals of this circuit.

It is possible that the decree below may be affirmed. The plaintiff knows how great a change the series of inventions described in the patents herein mentioned have wrought in the candy business. He owns all the patents for them. Those patents contain broad claims and many others which deal with diverse forms of machines in which the primary claims may be embodied. Not unnaturally he may feel that in some way and under some of the claims of these patents he may be entitled to stop the use without his consent of a machine which to him appears to be clearly within their terms. Upon the dismissal of his bill founded upon the fourth claim of the Hildreth patent, he began this new suit against the same defendant. In this he relies upon the first and second claims of the Dickenson patent and upon the first, seventh, and eighth of that to Jenner. The question as to some of these claims lies within a narrow compass and may be disposed of with few words.

The second claim of the Dickenson patent is for the combination "in a candy pulling machine of a stationary candy pin, a set of candy hooks, and means for moving and shifting one of said hooks in relation to the other substantially as described." The claim has clear reference to a detail of the construction of the Dickenson machine. Whenever the so-called hooks of that machine reached either end of the trough, their position to each other was automatically changed. In the Henry machine no such shifting is required or, except in the loosest use of language, takes place. It is true that the hooks in the Henry machine, as in the Dickenson, have in relation to each other and to the stationary member an in and out motion, but that motion in the Henry machine does not depend upon the use of a shifting device such as that shown in the Dickenson or upon any equivalent of such device. The claim appears to be valid, but it is not infringed.

"The first claim of the Jenner patent is for a candy pulling machine comprising horizontally disposed stationary supporting means and a plurality of pulling means."

The Henry machine has a horizontally disposed supporting means. It has a plurality of pulling means. If the claim is valid, it can be read upon the Henry device. There is no apparent reason to give it a construction more narrow than its words imply. Jenner was not a pioneer in the same sense or in the same degree as was Dickenson. He used Dickenson's basic principle of the relative in and out motion of a plurality of oppositely disposed hooks forcing the candy along the figure 8 pathway. He adopted Hildreth's idea of using the hooks and pullers to support the candy against gravity, and in such a machine he disposed his support horizontally. He doubtless was entitled to a patent for a combination of these elements from Dickenson and Hildreth with his own contribution to the art. He had no right, however, to bar all the world from inventing, if they could, candy pullers which worked on a different principle from that of Dickenson. He could not say that in such machines, radically different as they were from anything he had devised, the inventors could not use a horizontally disposed hook if they found it convenient so to do. If he could, Hildreth could have monopolized the field for perpendicular supports. A third

208 F.—64

patentee might have claimed every machine in which the supports lay in some plan between horizontal and perpendicular. In that simple way those who had made various forms of a machine operating on what was essentially the same fundamental principle could close the door against all other inventors even if they devised machines of a radically different type. The first claim of the Jenner patent must be held invalid as being much broader than any invention disclosed.

The seventh and eighth claims of the Jenner patent are limited to a machine of a particular construction. The seventh claim reads as follows:

"A candy pulling machine comprising a framing, a pin carried by the frame and shafts supported by the framing on opposite sides of the pin and having crank arms and pins carried thereby and arranged to revolve around the pin of the frame and means for driving the shafts substantially as set forth."

It is admitted that this claim, as well as the eighth, which need not be quoted in extenso, can be read literally upon the Henry machine. It is objected, however, that the actual machine shown and described in the drawings and specifications of the Jenner patent is different both from the Henry machine and from any machine upon which the claims could be read. The machine shown in Jenner's drawings has three stationary and two revolving pins. In that machine the two which are movable revolve in the same direction. In a machine so constructed there must be more than one stationary pin if candy is to be pulled. But the specifications clearly say that, if the movable pins are made to revolve in opposite directions, the results will be at least equally good. When so made to revolve, we have the Henry machine. It is a mere matter of detail, then, whether there is or is not more than one stationary pin. The seventh and eighth claims of the patent are not limited to a machine in which there is more than one stationary pin. They seem to be valid and to be infringed by the Henry machine. That machine is doubtless an improvement on the Jenner. If the owner of the Jenner patent were a different person from the owner of the Henry, the former would not be entitled to use the special feature of construction which appears to be the only thing covered by the Henry patent, but that, of course, would give the proprietor of the latter no right to use the Jenner either with or without the addition of his own improvement.

There remains for consideration the first claim of the Dickenson patent. In terms it may be read upon the Henry machine. It is said, however, first, that there is implied, although not expressed in the Dickenson claim, an element which does not exist in the Henry machine, and that consequently there is no infringement. In the Dickenson machine the candy is put in a trough and is made to move over the bottom of the trough in a figure 8 path. The trough is the only thing which to any appreciable extent supports the candy against gravity. If there were no trough or substitute for it, the candy would fall to the ground and the machine would be inoperative. Under these conditions the defendant says that the trough, being an essential portion of an operative machine, constitutes a necessarily implied element of Dickenson's first claim.

In passing upon this contention, it must be borne in mind that, in all the years during which this patent was before the Patent Office, no one ever supposed that a trough was an element of this claim. The office found this claim in effect in every one of the six applications as they were at first presented. It is certain that a trough did not constitute an element of that claim in any of the other five. But the interference was declared and so long contested because everybody understood that every one of the six applicants was making the same claim not only in words but in fact.

Dickenson and everybody else knew that, in order that his puller and hooks could pull the candy, the candy must be where they could take hold of it. Some way of supporting it against gravity was an obvious necessity. It does not follow that the patentee is bound to make any one of these ways an element of his claims. He shows a method of pulling candy in accordance with what he says is his inventive idea. In the illustration the candy is supported against gravity. That way of supporting it is not, however, a necessary element of his combination. He elected to make it an element of some of his claims, as, for example, of the fourth and the fifth. Wherever he has done so he is bound by it. Wherever he has not included it in words, there is no reason to suppose either that he in fact intended to do so by implication or to say that the law will make the implication whether he wanted to or not. The new thing which he found out was not a trough, but the fact that, if you give to a plurality of oppositely disposed candy hooks and a candy puller a peculiar kind of in and out motion that will force the candy along the figure 8 path, you will pull it. He was entitled to patent that combination. He had also the right to claim, as a more restricted combination because limited by more elements, the very form of machine in which he had used that which was broader and more all embracing. If his claim for that larger conception is invalid either because it is in its nature a claim for the function of a machine, or because he failed to embody it in any operative device, it will be stricken down. That, however, is no reason for saying that he intended to include in it an element which it is absolutely certain he wanted to exclude.

The defendant contends that the Dickenson patent is invalid because it is for an inoperative device. In the interference proceedings the same contention was made by the present plaintiff. Every one of the Patent Office boards and officials before which the interference came decided that it was not well founded. The Court of Appeals of the District of Columbia agreed with them. The thorough investigation which Dickenson's application then received as a result of that long drawn out contest, in which this very issue was repeatedly raised, adds unusual weight to the ordinary presumption of validity which attaches to every patent. In this connection, also, it is necessary to keep in mind for what invention this claim was granted. As already pointed out, the great thing which Dickenson found out was that oppositely disposed candy hooks and a candy puller given a specified in and out motion would move candy along a figure 8 pathway and would thereby pull it. That conception, instead of being inoperative, is in operation

in every one of the hundreds of candy pulling machines now in use. It is operating to-day to pull almost all the candy which is pulled in these United States. He complied with the requirements of the law by devising a machine which would give this in and out motion to the hooks and puller and would move the candy along the designated road. It is true that it is highly doubtful whether with his machine candy could be pulled for commercial purposes. The form of telephone which Bell made was valueless for practical use. Dickenson was able to see what had for years been hidden from all others. His discovery was illuminating. His execution poor. In patent cases it has been often noted that persons of the most brilliant conceptions are sometimes the poorest mechanics.

In view of the action of the Patent Office and of the Court of Appeals of the District of Columbia, of the facts disclosed by this record and of the principles laid down in many well-considered and authoritative decisions, the defense of inoperativeness cannot be sustained. Telephone Cases, 126 U. S. 535, 8 Sup. Ct. 778, 31 L. Ed. 863; Crown Cork & Seal Co. v. Aluminum Stopper Co., 108 Fed. 845, 48 C. C. A. 72; Von Schmidt v. Bowers, 80 Fed. 149, 25 C. C. A. 323; Packard v. Lacing Stud Co., 70 Fed. 67, 16 C. C. A. 639.

Defendant says, however, that, if so much be held against it, still this claim must be stricken down because it is so broad that it is for the function or mode of operation of a machine. In most cases in which a claim has been held to be functional, the inventor has claimed more than he invented, or at all events he claimed an exclusive right to do in any and every way something that other people had wanted to do before he did it. He asserted this right merely because he was the first person who had succeeded in doing it at all. The possibility and the desirability of using the power of the electric current to make intelligible signs at great distances had been recognized by many men before Morse found a method of doing it. Being the first inventor of that method, he was entitled to the monopoly of it for the statutory period. Moreover, as a pioneer he was entitled to have his claims so construed as to cover the broadest possible range of equivalents. Yet in his famous eighth claim he asked for more. If it were valid, he would have the right to say that other men who had been seeking the same goal could not now approach it even by a path over which he had thrown no light.

In the former case between the parties now before the court, if it be permissible to compare a relatively small invention with one which was epoch making, it was held that Hildreth could not sustain a claim which would have given him a monopoly of every way of supporting candy against gravity by the use of the hooks and pullers moving according to Dickenson's conception. The desirability of so supporting the candy was obvious. It might be invention to find a way of doing it. The first man who did it might be entitled to say that no one else should do it in any way so like his as to make it probable that it was suggested by his discovery. But he would have no right to shut off other men from using those hooks or pullers in a radically different way though for a like end and with a like ultimate result.

Before Dickenson perfected his invention, men had wanted a candy pulling machine. He found out how one might be made. That would have given him no right to a claim for a machine to pull candy. Such a claim would have been in relation to what he actually invented, as the eighth claim of Morse or as the fourth claim of Hildreth. But before Dickenson no one had wanted to make a machine with the in and out motion. That it was desirable to make such a machine for such a purpose was his idea. Whatever may be said of his claim, it is at least no broader than was his invention.

But is there any real reason for saying that a claim limited to a combination of a plurality of oppositely disposed candy hooks or supports, a candy puller, and means for producing a specified relative in and out motion of these parts for the purpose of making candy travel over a figure 8 pathway, is in any sense functional?

It may, perhaps, have some affinity to a claim for a mechanical process. If so, it will be none the worse. The doubt long entertained as to whether a mechanical process, as distinguished from a chemical one, is patentable, no longer exists. Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 Sup. Ct. 652, 53 L. Ed. 1034.

In no ordinary sense of the words does this claim appear to be functional. It is true that it covers many different machines which in appearance and details of construction are very unlike that of Dickenson and are, as among themselves, dissimilar. Yet it covers them because the operative principle in all of them is the one he was the first to contribute to the industrial knowledge of mankind. He brought that discovery to the Patent Office—that appointed treasury and storehouse for additions to the world's stock of materially useful information. He left it there and received in return the price the government offers to all inventors—the exclusive monopoly for 17 years of the right to make, use, and vend his invention. There is every reason why he should not be allowed to receive or to hold a grant which goes beyond the price he has paid. There is none why he should be deprived of any part of the invention he has made, when, as in this case, he has asked for and been given an aptly worded grant which accurately defines the precise limits of that which was the essence of his discovery.

It follows from what has been above said that the first claim of the Jenner patent, 804,726, will be held invalid.

The second claim of the Dickenson patent, 831,501, will be held valid but not infringed, and the first claim of the Dickenson and the seventh and eighth of the Jenner both valid and infringed.

A draft of a decree to that effect, and for an injunction and an accounting, if desired, may be presented.