### HILDRETH v. MASTORAS.

(District Court, D. Oregon. July 29, 1918.)

No. 7466.

1. PATENTS ☜168(2)—CLAIMS—CONSTRUCTION.
Where the first two claims of plaintiff's patent, after being rejected by the examiner, were later allowed as claims 10 and 11, there is no reason for a strict construction of the third claim, which, after the disallowance, was made No. 1.

2. PATENTS ☜90(5)—INVENTION—PRIORITY.
The original and first inventor is he who has not only first originated the novel concept, but who through the exercise of reasonable diligence has reduced it to practice; for a mere concept, not reduced to practice, is not in itself patentable.

3. PATENTS ☜311—INFRINGEMENT SUIT—EVIDENCE.
In a suit for infringement, evidence that complainant's device is not operative is provable under the general issue.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. PATENTS ☞49—VALIDITY—OPERATIVE DEVICE.
  A patent *held*, in view of the long interference proceedings and the subsequent decision of the Court of Appeals for the District of Columbia wherein it was decided that the patent was basic, to afford prima facie proof of the operativeness and utility of the machine.
5. PATENTS ☞47—PIONEER PATENTS—OPERATIVE CHARACTER.
  A device need not be perfect in order to escape the charge of inoperativeness, and in case of a pioneer patent no one can expect the operative character of the device to respond to the highest test of perfection in the art.
6. PATENTS ☞173—CONSTRUCTION—CLAIMS.
  A pioneer patent is entitled to a broad construction of its claims, though of course it cannot be broader than the claims.
7. PATENTS ☞328—VALIDITY—INFRINGEMENT.
  The Dickinson patent, No. 831,501, claim 1 of which was for a candy-pulling machine comprising a plurality of oppositely disposed candy hooks or supports, and means for producing an in-and-out motion of those parts, *held* valid and infringed by defendant's device.

In Equity. Suit by Herbert L. Hildreth against Jim M. Mastoras. Decree for complainant.

Macleod, Calver, Copeland & Dike, of Boston, Mass., and Chester G. Murphy, of Portland, Or., for complainant.

A. W. Lafferty, D. E. Lofgren, J. L. Atkins, and W. A. Robbins, all of Portland, Or., for defendant.

WOLVERTON, District Judge. This is a suit for injunction to restrain an alleged infringement by defendant of complainant's patent. Complainant is the owner of what is known as the Herbert M. Dickinson patent, letters patent for which were issued to him, being numbered 831,501. The device is for pulling candy. Claim 1, which it is claimed is being infringed, is as follows:

"A candy-pulling machine, comprising a plurality of oppositely disposed candy hooks or supports, a candy puller, and means for producing a specified relative in-and-out motion of these parts, for the purpose set forth."

The hooks consist of a perpendicular standard or pin affixed to the bottom of a trough and in the center thereof, and two other pins or standards suspended from an arm or plate, which in turn is affixed to a support and made to rotate nearly a one-half revolution. By suitable contrivance the support which carries the pins is made to move back and forth from end to end of the trough, and at each end of the trough the pins are made, by the rotary motion of the plate to which they are suspended, to reverse their positions from one side of the trough to the other before beginning their movement in the opposite direction. In this way there is produced an in-and-out movement of the suspended pins relative to the stationary pin every time they reach and depart from the ends of the trough. This movement causes the hank of candy which is placed in the trough to be pulled by lapping on itself, as the suspended pins pass and repass the fixed pin and as their positions are reversed. The operation of the device pulls the candy, or at least that is the theory advanced by the complainant.

Defendant is the assignee of the Langer patent, No. 1,232,697, and his device, which it is alleged infringes claim 1 of the complainant's patent, consists simply of two stationary pins, each extending horizontally from the center of a disk, and a third pin, which is made to rotate about the disks in opposite directions, so as to pass and repass between the stationary pins at each revolution. The candy is placed on the pins in operation, and is lapped and relapped as the rotating pin passes and repasses between the stationary pins. When the candy is in proper elasticity, it needs no support aside from that afforded by the pins.

[1] Preliminary to entering upon the more salient features of the present inquiry, I will dispose of a suggestion of counsel for the defendant to the effect that the Patent Office, in an interference proceeding had involving the Dickinson patent with others, has rendered claim 1 of the patent subject to a narrow rather than a broad construction. Originally Dickinson made but three claims, of which what is now claim 1 was the third, and the suggestion is based upon the fact that at one stage in the proceeding claims 1 and 2 were rejected by the examiner. However, further action was taken respecting the rejected claims, a matter which counsel seem to have overlooked, whereby claim 1 was eventually allowed in exactly the same language as first written. It now constitutes claim 10 in the patent. Claim 2 was also allowed, with an amendment to avoid a supposed conflict with Firchau, making it read "a series of more than two pins or pulling members," instead of "a series of pins or pulling members." As amended, it is now claim 11. The Firchau concept was not in its operation a machine for pulling candy at all, but one for working or mixing candy. The contrivance consists of a drum with two pins or fingers extending therein, which are rotated in opposite directions, and has none of the elements of the Dickinson machine. This disposes of any inference of narrow construction that might otherwise have been drawn from the fact of the examiner first rejecting claims 1 and 2 as first propounded by Dickinson, and also of any contention that the Firchau patent anticipates the Dickinson device. These matters of conflict were settled in the Patent Office in the interference proceeding, and need no further elucidation.

[2] Another argument presented by counsel for defendant is that there has never been any reduction to practice of the Dickinson machine, and hence that there was no completion of the inventive act, or that because thereof the thing claimed by him never eventuated into a completed invention. Reduction to practice is but an element in an investigation for determining who is the original and first inventor, where two or more persons who have conceived a supposedly novel idea respecting a device or combination not theretofore known or used are each seeking to establish the right to a patent as the prior and first inventor. The concept is not in itself patentable, and it is only after the supposed novel device has been reduced to practice that the inventor is entitled to patent. So it is that the person who is first to conceive the invention, but is later than his rival in reducing it to practice, is not regarded as the first inventor, unless he has exercised due diligence

in efforts to perfect the invention at and continuously after the time his rival entered the field against him. And it may happen that the first to originate the concept, but last to reduce the device to practice, if he has exercised reasonable diligence under all the circumstances, will be entitled to the patent. 30 Cyc. 876. It results, therefore, that the original and first inventor is he who has not only first originated the novel concept, but who, through the exercise of reasonable diligence, in view of the surrounding and attending circumstances, was first to reduce it to practice.

[3] There is no dispute here involving priority of invention. There is a dispute, however, which presents the question whether the complainant has any invention at all, or an invention presenting any utility or importance. This is predicated upon the insistence of one of counsel for the defendant that there is a total inoperativeness of the machine constructed under the Dickinson patent. That the device is inoperative, if such is the case, is provable under the general issue. Reckendorfer v. Faber, 92 U. S. 347, 354, 23 L. Ed. 719.

[4, 5] Aside from the presumption that the patent affords that the Dickinson machine is operative, the testimony here satisfactorily shows it to be a fact. Complainant, the present owner of the patent, had and still has one of the machines in his factory. He testifies that he has used it in practical operation, and that while, as originally constructed, it did not pull candy satisfactorily, yet by shortening the reach of the pull, and speeding up the mechanical apparatus for moving the pins, it did the work all right, and would pull candy commercially. The change in construction to speed up the operation in no way affected the principle involved by the invention. A model has been introduced in evidence, showing the mechanical operation of the machine, and it is within itself a demonstration that it pulls candy.

Take any plastic, cohesive substance, held by two objects, separately adjusted, which are made to pass a stationary intervening object, one upon each side thereof, and the substance, when contact is made with the intervening object, will be caused to lap on itself and to stretch or be pulled as candy is pulled by hand. Again, when the positions of the two objects are reversed, in manner as the Dickinson device designs they shall be, one of the objects passes between the intervening or stationary object and the other of the two, and another contact with the substance is made, which will cause it to stretch or be pulled, but in a less degree, because the reach of the movement is shorter. Can there be any doubt about a device of the kind, and thus operated, stretching or pulling the substance mechanically? Surely there can be none. If none, what becomes of the alleged inoperativeness of the Dickinson device? By causing the two objects to move in opposite directions past the intervening or stationary object, and to be reversed at the respective extremities, the substance will again be caused to be twice stretched or pulled, in the same way as above indicated, and thus will be completed a cycle in operation of the Dickinson device. The continued operation consists in repeating the cycles in movement of the moving objects in relation to the stationary object.

No further argument is necessary to convince one that the device is mechanically operative for pulling candy in some form. It may not be the best device possible for the purpose, but it is self-evident that it will pull candy. The question will receive further elaboration in the discussion of a somewhat correlated contention made by one of defendant's counsel. The contention is that, while it is conceded that the Dickinson patent is valid and the device useful, yet it cannot be used to pull candy, or rather that claim 1 of the Dickinson patent is susceptible only of a narrow construction, and, so construed, that the Langer patent does not infringe.

No better illustration in discussion can be produced than that which comes out of the interference proceeding in the Patent Office. In the long struggle Dickinson had in the Patent Office by reason of the interference proceedings, which extended over a period of five years, five other applications for patents were at one time and another involved in the controversy. In some instances, the applicants withdrew the broad claims which were said to be in conflict with those of the other inventors, and accepted patents which covered merely the special types of machines designed by them. In other cases, the question of priority was, after more or less prolonged contest, determined by the Patent Office. The five were those of Hildreth, Jenner, Thibodeau, Robinson, and Henry. The one idea common to all these applications, including Dickinson's, is that couched in the exact language of claim 1 of the Dickinson patent as finally approved and issued by the Patent Office. That the claim was considered to contain the basic principle or elements dominating the claims of all the applicants is attested by the strenuous contest made upon the part of each applicant to have it read into his patent above that of the other contestants. The Patent Office not only declared Dickinson to be the original and first inventor of the device embodying the principle, but further declared that the principle itself was basic in character and dominated all the other devices for which applications were then pending, or at some time had been during the interference proceedings. Brief reference will be made to the patents awarded in the interference proceeding, and attention directed to the different types.

The Hildreth device consists of two pins adjusted in a vertical position on oppositely disposed arms of an oscillating beam, and a third in the form of a swinging pendulum. By co-operation of the pendulum with the oscillating pins there is produced an in-and-out movement of the pins with relation to each other, which produces contact with the candy, and causes a lapping and pulling of the same, and in each cycle of operation the candy is four times lapped and pulled, the same as by the Dickinson machine.

The Jenner machine is provided with five pins horizontally disposed, three of which are stationary and the other two but the handles of a crank, which are made to revolve in the same direction, so relatively disposed to the stationary pins as to move in intersecting paths; each crank pin in its revolution circumscribing two of the stationary pins. Thus contact by the pins is three times made with the candy at each revolution of each crankpin, and the candy is accordingly lapped and

pulled. Here again is found the in-and-out or intersecting movement, although the pins are horizontally and differently disposed, three being stationary and two moving.

The Thibodeau machine has four pins horizontally disposed, supported by two levers, a pair being attached to each lever, and the arms caused to rotate in the same direction. The levers have each a short arm and a long arm, and when the rotation takes place the in-and-out or intersecting movement is produced, and the candy when laid on the pins is lapped and pulled.

The Robinson machine contains three horizontally disposed pins, one of which is stationary. The other two are really crank-shaped arms, which are made to revolve about the stationary pin in opposite directions. Thus is secured the intersecting or in-and-out movement for lapping and stretching the candy.

The Henry machine is much of the same order, except the crank pins have the form of hooks, and are so called, and the cranks revolve in unison. The machine is double, having a set of pins on each side of the operating machinery, so that two batches of candy may be pulled at the same time.

Now, the principle of pulling candy is common to all these machines. They all have the intersecting or in-and-out movement of the pins acting relatively to each other, by which the candy is engaged and lapped, and stretched or pulled. This is practically the only way that candy can be pulled commercially. The idea was suggested, no doubt, by the method of hand pulling, by which the candy is thrown over a stationary hook and stretched. Then by holding the end in one hand, the elongated hank is seized in the center with the other, and the hank again thrown over the hook, and the pulling repeated. What was desired was a machine that would pull candy on the same principle. Dickinson first hit upon such a contrivance by resorting to the system of pins so disposed and so operated as to produce relatively the in-and-out movement, and thus to engage the candy and lap or stretch or pull it. None of the other machines produced in the interference proceeding did more. Some of them, perhaps all of them, pulled candy more successfully; but they all resorted to the same principle for pulling candy as did Dickinson. The in-and-out or intervening movement of the pins operating relatively to each other was found common to all, and this, whether the pins consisted of three or more than three, or whether they were vertically or horizontally disposed; and the question of needed support for the candy, other than the pins afforded, while the machine was in operation, was treated as wholly irrelevant to the controversy. In the light of all this, the examiner of interferences defined the issue as relating to a pioneer invention, and of a generic nature broad enough to include the widely different types of machines shown in the several applications. The decision passed by appeal to the Board of Examiners in Chief, thence to the Commissioner of Patents in person, and then to the Court of Appeals for the District of Columbia, and by each of such tribunals was affirmed. The Commissioner of Patents in his decision says:

"Dickinson seems to have the elements of the machine called for by the issue, and those elements are mechanically operative. * * * The record furnishes no justification for the conclusion that Dickinson's machine was useless, whatever conclusion may be reached as to the comparative superiority of the various machines."

The effect of these decisions is certainly sufficient to render the patent prima facie proof of the operativeness and utility of the Dickinson machine, whatever may be the rule generally. But, being a pioneer patent, no one could expect the operative character of the device to respond to the highest test of perfection in the art. Judge Hough has stated the principle clearly in Engineer Co. v. Hotel Astor et al. (D. C.) 226 Fed. 779, as follows:

"A device need not be perfect in order to escape the charge of inoperativeness. * * * The test of operativeness is to ascertain whether the patented device does (even lamely and imperfectly) perform the acts claimed for it in the method described and (perhaps) for the reasons given."

The cases are numerous to the same purpose. See, among others, Telephone Cases, 126 U. S. 536, 8 Sup. Ct. 778, 31 L. Ed. 863; Mergenthaler Linotype Co. v. Press Pub. Co. (C. C.) 57 Fed. 502, 506; Thomson-Houston Electric Co. v. Lorain Steel Co. (C. C.) 103 Fed. 641, 644; Crown Cork & Seal Co. v. Aluminum Stopper Co., 108 Fed. 845, 48 C. C. A. 72.

The claim that the Dickinson machine will stir candy, but will not pull it, and therefore that it is inoperative to pull candy, is not sustained. I have not overlooked the case of Besser v. Merrilat Culvert Core Co., 243 Fed. 611, 156 C. C. A. 309.

Reference has been made also to the Igou patent; but it is of a type similar in construction to the Hildreth patent, and needs no further elucidation to show that it also falls within the same principle governing all, as it respects claim 1 of the Dickinson patent.

[6, 7] The fact that the Dickinson patent is a pioneer in the art entitles it to a broad construction. Of course, it could not be broader than the claim. But a reference to the claim shows it to be broad in character, and to comprise any candy-pulling machine having a plurality of oppositely disposed hooks or supports, a candy puller, and means for producing a relative in-and-out motion of the parts. "If," says the court in Miller v. Eagle Manufacturing Co., 151 U. S. 186, 207, 14 Sup. Ct. 310, 318 (38 L. Ed. 121), "the invention is broad or primary in its character, the range of equivalents will be correspondingly broad, under the liberal construction which the courts give to such inventions." As we have seen, the principle sought to be applied is the relative in-and-out movement of the pins, so as to bring the same in contact with the candy and cause it to be lapped and pulled. The principle is basic, and dominates all machines constructed for pulling candy which seek to apply it in operation.

The defendant's machine has the relative in-and-out movement perfectly, and without it the machine would not pull candy. It is of a type, respecting the basic principle of its operation, not different from those machines considered in the interference proceeding. It

is a marked improvement on the Dickinson machine, but it cannot be operated without applying the basic principle for pulling candy by machinery which Dickinson invented; and this in itself is a demonstration that it infringes the Dickinson patent. That the defendant's machine has two stationary pins and one moving, as against two moving and one stationary in the Dickinson and Robinson patents, makes no difference. The principle of the relatively intervening or in-and-out movement of the pins is applied in each, and that is the essential thing.

It is true that, where two machines produce the same effect merely, no justification is afforded thereby for the assertion that they are substantially the same, or that the devices used by one are therefore mere equivalents for those of the other. This would reverse the logic in reasoning from cause to effect. But infringement, it is said, "is a copy of the thing described in the specification of the patentee, either without variation, or with such variations as are consistent with its being in substance the same thing. If the invention of the patentee be a machine, it will be infringed by a machine which incorporates in its structure and operation the substance of the invention; that is, by an arrangement of mechanism which performs the same service or produces the same effect in the same way, or substantially the same way." Burr v. Duryee, 1 Wall. 531, 573 (17 L. Ed. 650). The principle is restated in Morley Machine Co. v. Lancaster, 129 U. S. 263, 273, 9 Sup. Ct. 299, 302 (32 L. Ed. 715), as follows:

"Where an invention is one of a primary character, and the mechanical functions performed by the machine are, as a whole, entirely new, all subsequent machines which employ substantially the same means to accomplish the same result are infringements, although the subsequent machine may contain improvements in the separate mechanisms which go to make up the machine."

See, also, Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 569, 18 Sup. Ct. 707, 42 L. Ed. 1136.

Turning again to claim 1 of the Dickinson patent, its language and wording, it can be read directly upon the Langer patent, and, while the mechanism is different in arrangement and in the movement of its parts, it performs the same service in substantially the same way, and the appliances adopted by the Langer patent are but mere mechanical equivalents of those used in the Dickinson machine. It results that the Langer patent infringes that of Dickinson, as it respects claim 1 of the latter patent.

Nor is claim 1 functional merely, and therefore too broad to be sustained. The reasoning of Judge Rose, in Hildreth v. Lauer & Suter Co. (D. C.) 208 Fed. 1005, 1012, to my mind satisfactorily disposes of the proposition, and I need not repeat it here.

The complainant is entitled to an injunction, and the cause will be referred to the master in chancery to take the accounting.