## SCHUTE et al. v. HILDRETH.

(Circuit Court of Appeals, Third Circuit. October 3, 1925.)

No. 3290.

Patents ⊙328—857,770, candy-pulling machine, held valid and infringed.

Thibodeau machine patent, No. 857,770, covering device for pulling candy, *held* valid, not a double patenting of Thibodeau method patent, No. 736,313, and infringed.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Charles L. McKeehan, District Judge.

Patent infringement suit by Herbert A. Hildreth, administrator of the estate of Herbert L. Hildreth, deceased, against Louisa Schute, executrix of the last will and testament of Frank Schute, deceased, and another, doing business as Frank Schute's Sons. Decree for plaintiff, and defendants appeal. Affirmed.

E. Hayward Fairbanks, of Philadelphia, Pa., for appellants.

George P. Dike and Henry R. Ashton, both of Boston, Mass., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and MORRIS, District Judge.

WOOLLEY, Circuit Judge. Three patents are involved in this litigation. Stated not in the order of their issuance, but in the order of their inventions as subsequently litigated, the first (No. 831,501) was issued to Dickinson for a machine; the second (No. 857,770) to Thibodeau for a machine; and the third (No. 736,313) to Thibodeau for a method. All are now expired.

Before the expiration of the first two patents, the owner brought this action charging their infringement. The defendants admitted using a machine which was identically that of the Thibodeau machine patent, but denied infringement on the contentions, first, that they were practicing the method of the Thibodeau method patent, then expired, and, second, that the Thibodeau method was not disclosed by Dickinson and therefore it was not covered by his patent. The learned trial court, by its decree, found the Thibodeau method patent invalid. This finding deprived the defendants of their main defense and, with the two patents sued upon standing, the court held the claims in suit (claim 1 of the first patent and claims 1, 8, 18 and 19 of the second) were valid and infringed. The defendants appealed.

The three patents relate to the art of pulling candy. Referring to the litigious literature of the inventions for the history of the art, we shall state only such of its phases as bear upon this, its latest and perhaps its last chapter.

Before Dickinson, candy was pulled only by hand. The candy puller, after working the candy into a sausage-like piece two or three feet long, first threw it, midway, over a hook fixed in the wall on about the level of his chin. He then pulled down the two ends, stretching the batch several times its length. On the next move he held the two ends together with one hand and with the other seized the two strands at the middle and threw them over the hook, thus making a new bight of the folded or lapped strands over the hook and at the same time shortening the batch. He then brought together the ends of the newly formed batch and pulled them down as before, repeating the operation until the candy had attained its desired condition.

This was the state of the art when, in 1900, Dickinson invented a machine for pulling candy, describing it in a trade journal and offering it for sale. As disclosed by claim 1 of the patent, later granted him, the invention was:

"A candy-pulling machine comprising a plurality of oppositely-disposed candy hooks or supports, a candy puller, means for producing a specified relative in-and-out motion of these parts for the purpose set forth."

Roughly described, the structure was a trough containing one fixed central vertically standing pin and two vertically depending movable pins. The stationary pin was intended to perform the function of the hook in the manual art and the movable pins to take the place of the hands of the puller. On the movement of the depending pins along the trough, the batch of candy was drawn against the standing pin and caught in the middle. Thus caught, the depending pins, continuing their movement, stretched or pulled the candy to the end of the trough opposite that at which they had started. There the depending pins were reversed in position and, thereby, the strands were folded or lapped. On the return movement of the depending pins the stationary pin again acted as a hook and, taking a bight on the lapped strands, held them while the pull was continued to the starting point. This operation was repeated as often as desired. The thing which Dickinson found out was that oppositely-disposed candy hooks and a candy puller given a specified in-and-out motion would move candy along a figure-8 pathway and would pull it even better than when pulled by hand and in a vastly greater quantity at greatly reduced cost.

Before Dickinson applied for a patent other inventors had rushed into the art and applied for patents. Notable among them was Thibodeau. His machine is commonly seen at amusement resorts. He dispensed with the trough and the vertically positioned pins of Dickinson and provided, in staggered relation, two geared vertically positioned wheels, from each of which a shaft extends horizontally. These shafts are parallel but not in alignment with each other. From a cross-bar attached to the end of each shaft two pins project horizontally, but at an unequal distance from the shaft axis. The operative effect of this arrangement is that on revolving the geared wheels in the same direction the pin-bearing shafts revolve in the same direction, and the pins nearest the respective shafts revolve in circles which do not intersect or overlap each

other while the pins which are farthest from the respective shafts revolve in circles that overlap and therefore intersect. Here, it was thought, was Dickinson's in-and-out figure-8 motion. Dickinson then filed an application for a patent. Based on the words of claim 1 of the Dickinson patent, previously quoted, the Patent Office declared an interference between Dickinson and other applicants—Hildreth, Jenner, Thibodeau, Robinson and Henry. After a contest lasting five years the Patent Office awarded priority to Dickinson and, on appeal, the Court of Appeals of the District of Columbia affirmed its action. Thibodeau v. Dickinson, 25 App. D. C. 316. Thereafter the several applicants were awarded patents with claims of varying breadth and immediately widespread litigation began.

The District Court for the District of Maryland held the Dickinson patent valid and, following the Court of Appeals of the District of Columbia in its finding that it covered a pioneer and basic invention, accorded its claims a wide range of equivalents. Hildreth v. Lauer & Suter Co. (D. C.) 208 F. 1005, affirmed (C. C. A. 4th) 219 F. 753, 135 C. C. A. 451. In Hildreth v. Auerbach (D. C.) 223 F. 545, the District Court for the Southern District of New York, when adjudicating another patent, had occasion to construe the breadth of the claims of the Dickinson patent. In doing so, it followed the reasoning in Hildreth v. Lauer & Suter Co. On review, the Circuit Court of Appeals for the Second Circuit expressed the opinion that the claims were too broadly construed in those decisions. Hildreth v. Auerbach, 223 F. 651, 139 C. C. A. 205. The litigation then moved west. The District Court for the District of Oregon, following the courts in the Fourth Circuit, held that the patent was for a basic invention and was broadly valid. Hildreth v. Mastoras (D. C.) 253 F. 68. But on review the Circuit Court of Appeals for the Ninth Circuit, while holding the patent valid, narrowed its claims and, on a finding of non-infringement, reversed the decree of the District Court. Mastoras v. Hildreth, 263 F. 571. With opposing decisions in several circuits on the scope of the claims of the Dickinson patent, the Supreme Court on certiorari reviewed the last case. Hildreth v. Mastoras, 257 U. S. 27, 42 S. Ct. 20, 66 L. Ed. 112. That court, in reversing the decree of the Circuit Court of Appeals for the Ninth Circuit, expressly concurred in the findings of the Patent Office, the Court of Appeals of the District of Colum-

bia and the courts of the Fourth Circuit that the invention was primary or generic. Thus the Dickinson patent has, with finality, been adjudicated the basis of the machine candy-pulling art.

The Thibodeau machine patent has also been held valid, Hildreth v. Auerbach (D. C.) 223 F. 545; Id., 223 F. 651, 139 C. C. A. 205; yet only so far as the invention is an improvement on Dickinson. The lower courts have held, and the Supreme Court in Hildreth v. Mastoras has clearly intimated, that the improvement by Thibodeau embodies the central principle of the invention of the Dickinson patent, that it is within the range of equivalents belonging to the latter and is, therefore, within its domination.

Until the institution of this suit and the insistence of the grounds on which it has been defended, it was regarded, in the light of these decisions, that the validity and breadth of the claims of the two patents in suit and the subservience of the junior to the senior had been established.

The defendants, conceding the validity of the Dickinson patent, say that its claims are not broad enough to cover what they did. The thing they did, they maintain, was to practice the method of the expired Thibodeau method patent by using the machine of the unexpired Thibodeau machine patent. The method "consists in moving one portion of a batch in a continuous path, simultaneously moving another portion in a different continuous path to stretch the intermediate mass, and then laterally deflecting the said intermediate mass." They say that nothing like this was disclosed by Dickinson. We have difficulty in following this reasoning, for the logic of the situation is, that if, as the courts have held, the essence of the Dickinson invention is present in the Thibodeau machine, the practice of the Thibodeau method by the Thibodeau machine involves inevitably the use of the Dickinson invention. That infringed the Dickinson patent. And this is true whether the Thibodeau machine patent was valid or invalid.

On the issue of infringing the Thibodeau machine patent the defendants defend on the contentions first, that that patent, not expired at the time of suit, was invalid because of double patenting with the Thibodeau method patent; and second, if valid, they did nothing more than practice the invention of the Thibodeau method patent, then expired and free to the world.

Unlike the learned trial court, we do not

feel called upon to consider and adjudge the validity of the expired Thibodeau method patent, except incidentally as the question arises on the issue of double patenting. The true question is the validity of the Thibodeau machine patent which had not expired at the time of the alleged infringement and at the time of suit. What happened in the Patent Office was this: Thibodeau applied for a machine patent. Later, he applied for a method patent, using the drawings and much of the specification of his application for the machine patent to disclose one means by which to practice his method. He was awarded patents for both; the method patent first and the machine patent last. His rotary four-arm machine with its in-and-out movement has been definitely adjudged an invention which was only an improvement upon Dickinson. It follows that his method patent describing the same movement was also subservient to Dickinson. Were the two Thibodeau patents granted for the same invention because each disclosed the same movement? We think not, for while the movement was Dickinson's, the Thibodeau machine patent showed one, way by which it could be performed and his method patent disclosed the movement in a way that could be performed not only by his machine but by other rotary pulling machines, for instance, by the machines illustrated in the patent to Henry, No. 731,681, the patent to Robinson and Deiter, No. 881,442, and the patent to Jenner, No. 804,726, referred to in the opinion in Hildreth v. Mastoras, 257. U. S. 27, 42 S. Ct. 20, 66 L. Ed. 112.

The machines of these patents, which like the Thibodeau machine employ the basic movement of Dickinson's invention, have not been found to infringe the Thibodeau machine patent. All are improvements upon Dickinson and, being different from one another in structure, they teach the Dickinson movement in different ways. Therefore the difference in these several machines, in all of which Thibodeau's method of employing Dickinson's movement can be practiced, negatives identity of the Thibodeau machine and the Thibodeau method, and, similarly, negatives the idea of the double patenting of these two inventions.

In our view the Thibodeau machine and method are not the same invention but are separate inventions capable of being used and practiced without relation to one another, except always as each involves Dickinson's conception. Century Electric Co. v. Westinghouse Electric & Mfg. Co., 191

F. 350, 359, 360, 112 C. C. A. 8; One-Piece Bifocal Lens Co. v. Bisight Co. (D. C.) 246 F. 450, 461; Robinson on Patents, vol. I, § 163; volume II, § 466. Therefore the defendants had a right to practice the expired Thibodeau method with any mechanism at hand except the machine of the unexpired Thibodeau machine patent. With this limitation, the art was free to them. When, for reasons of their own, the defendants selected and used the machine of the Thibodeau machine patent, they did not practice the method of a dead patent; they infringed a live patent.

Though on a different line of reasoning, we have reached the same judgment as that of the learned trial court. Accordingly, its decree is affirmed.