## UNITED DRUG CO. v. IRELAND CANDY CO. et al.

### No. 8324.

District Court, E. D. Missouri, E. D.

Dec. 9, 1929.

Delos G. Haynes, of St. Louis, Mo., and Jesse A. Holton, of Boston, Mass., for plaintiff.

Chester T. Neal (of Chapin & Neal), of Springfield, Mass., and James L. Hopkins, of St. Louis, Mo., for defendants.

DAVIS, District Judge.

This is an action for the alleged infringement of patent No. 1,612,762, granted to John M. Flynn, assignor of the plaintiff, United Drug Company, on December 28, 1926, the application for which was filed on September 2, 1925.

The defenses set up are the invalidity of the patent, for the reason that it is vague and indefinite, and because of prior public use for more than two years before the filing of the application, and public use before the alleged invention; and noninfringement. The answer also contains a counterclaim in which it is alleged that plaintiff has infringed patent No. 1,302,205, granted to Antonio Pagliuca, assignor of defendant, National Equipment Company, on April 29, 1919, the application for which was filed December 4, 1917.

We turn first to the Flynn patent. This is a patent for a device forming a part of a

machine for coating candy, and it is called an enrober. It comprises a feeding belt which carries pieces of candy into a warming chamber in which the confection is carried through a sheet of warm chocolate. This chocolate there covers the candy base, and the confection is then carried out of the warming chamber and delivered onto a second belt which carries the piece of candy into a cool chamber. As the candy leaves the heated chamber there is a tendency for the warm coating to run down and off the pieces of candy forming a tail. The patent device is for the purpose of removing this tail from the candy, and it is designated a de-tailing or anti-tailing rod. This rod is therefore but one of the elements of the candy coating machine. It is placed in the machine at the point between the feed belt, which is made in part of wire, and the delivery belt.

The use of a somewhat similar rod was then common in the art. The Flynn patent states in the specification that "the enrober machines have been equipped for some years with such a structure as broadly stated. The present invention deals with an improvement on the machines which have been in commercial use, the additional mechanical changes being relatively slight and confined to variations in size of the de-tailing rod, the speed at which it rotates and the arrangement of the rod with respect to the conveyer sheets and the arrangement of the conveyer sheets with respect to each other." The specifications further describe the de-tailing rod as "of very small diameter, reduced in the size to about one-third of the diameter on the detailing rods formerly used."

The patent contains three claims and it is alleged that all of them have been infringed. Claim 1, however, is fairly descriptive of each of the claims, and it is as follows: "1. A mechanism for removing the tails from confections comprising in combination a feeding sheet for coated confections, an *extremely small rotating gyratory rod arranged close to the end of said sheet and operated at a high speed with a gyral action*, and a second feed sheet having an end arranged close to the said small rod, the aforesaid parts being juxtaposed so as to enable the confections to get its entire support from the feeding means as it passes from one to the other."

At this point let us turn to the history of plaintiff's patent in the department. As it was originally filed it contained three claims, in none of which was the gyratory action mentioned or suggested. These claims were rejected as being the same as that revealed in the Pagliuca device. The claims were then amended by the insertion of the alleged gyral action feature. These claims were again rejected, because they presented the same features shown in the Bausmann patent, No. 1,595,444, the application for which was filed on June 23, 1925, and the patent granted August 10, 1926. The patentee then filed an affidavit carrying the date of his invention back prior to the date of the application for the Bausmann patent, that is, prior to June 23, 1925. Again the claims were rejected because of the insufficiency of the affidavit. The claims were again recast with no material change except to make clear that the detailing rod rotates in the same direction that the belts of the enrobing machine move, as in the Pagliuca patent, and not in the direction revealed in the Bausmann patent, No. 1,595,-444. Additional affidavits were filed, persistence was rewarded, and the Flynn patent granted.

The defendant National Equipment Company has for many years been engaged in the business of manufacturing and selling candy coating machines. It has sold such machines to defendant Ireland Candy Company, and plaintiff, United Drug Company. It had several machines in the plant of plaintiff at St. Louis, Mo. In September, 1924, defendants' salesman called at plaintiff's plant and observed the enrobers in use. The patentee, John M. Flynn, was employed in plaintiff's St. Louis plant. The salesman there observed that the de-tailing shaft had been changed from the machine as originally sent out in that a de-tailing rod three-sixteenths of an inch in diameter had been installed, and that it was so adjusted as to cause the rod to move materially faster than it had been originally designed. This appeared to cause an improvement in the operation of the device, and the salesman recommended its adoption to his employer. This suggestion was accepted by the National Equipment Company, and substantially this alteration has subsequently become standard equipment on defendants' machines. Thereafter the patentee, on September 2, 1925, made application, and on December 28, 1926, the patent in suit was granted on this device. Prior to the making of this alteration the Equipment Company was manufacturing a candy coating machine equipped with a de-tailing device described in the Pagliuca patent, No. 1,302,205, which is set up in defendants' counterclaim.

The plaintiff claims that the Flynn patent is different from the Pagliuca device in two respects: First, that the de-tailing shaft is smaller; that it is from one-eighth to three-

sixteenths of an inch in diameter, whereas the shaft in the Pagliuca machine is five-sixteenths of an inch in diameter. Second, it is claimed that the speed of the shaft in the Flynn device is 700 to 1400 R. P. M., while in the Pagliuca de-tailing rod the speed is from 300 to 400 R. P. M. It is asserted that this increased speed causes the de-tailing rod to gyrate in its operation, and that, as a result thereof, the tails flipped off of candy while the former machine did not operate in this manner, but it wiped off the tails of the confection. The de-tailing rods in the two machines admittedly accomplish the same purpose, but plaintiff claims that they do not do so in the same manner.

▮ The Flynn patent must be given a narrow construction, because it relates to subject-matter which had previously received attention. The description of the rod in the patent is that in size it is one-third of the diameter of de-tailing rods formerly used. There is no more particular description in the specifications. This indefinite description has given rise to a controversy between the parties as to the actual size of the rod covered by the patent. The plaintiff contends that the size of the rod is one-third of the size of the rods described in the prior art as cited by the defendants. The defendants, on the other hand, contend that the size of the rod described in the patent is one-third of that of the de-tailing rods that were then shown to have been known to the patentee, that is, rods in use in the plant of the plaintiff company at the time of the filing of the application. The mere existence of divergent views indicates the vagueness of the patent.

▮ It is also to be noticed that, while the plaintiff attributes its result to the materially higher speed at which the rod rotates, and thereby caused to gyrate in its movement, there is nothing in the patent to indicate what this speed actually is. The statute requires that the patent be described in such full, clear, concise, and exact terms as to enable any person skilled in the art to make, construct, and use the same. This information must be obtainable from the patent and is not to be acquired by experiment. This is particularly important where, as in this instance, the subject-matter is not new, but at most there is only an improvement on an existing device. The patent should clearly point out the definite nature of the advance. It will not do to vaguely state what the improvement is, and then claim a monopoly on the whole field. This patent seems to be materially deficient in this respect, in that a read-

ing of the patent will disclose neither the size of the de-tailing rod nor the speed at which it operates. Our impression is that the patent must fail because of vagueness of its terms. If the size of the rod and the speed at which it rotates are of the essence of the patent, then these elements should be definitely disclosed in the patent itself. Reflectolyte Co. v. Luminous Unit Co., 20 F.(2d) 607 (C. C. A. 8); Torrey v. Hancock, 184 F. 61 (C. C. A. 8); Steel Wheel Corp. v. Goodrich Rubber Co. (D. C.) 27 F.(2d) 427; Sanitary Refrigerator Co. v. Winters et al., 280 U. S. 30, 50 S. Ct. 9, 74 L. Ed. ——.

The plaintiff contends that the exact size of the rod is not of the essence of the patent, because the size of the rod must to some extent depend upon the length. The greater the length of the rod, the greater must be its size in order to produce the gyratory action. So it is at once seen that plaintiff's structure approaches that of the Pagliuca patent. Claims 12 and 14 of this latter patent are typical and they are as follows:

"12. In a machine of the type specified, the combination comprising conveyers arranged one forward of the other in continuation thereof with a space separating the adjacent ends of said conveyers, *an interposed means presenting a moving surface in the space between the ends of said conveyers*, and means whereby said conveyers and interposed means may be operated and *the moving surface of said interposed means may have a speed greater than the speed of said conveyers*."

"14. In a machine of the type specified, the combination comprising conveyers arranged one forward of the other in continuation thereof with a space separating the adjacent ends of said conveyers, *a roll arranged in the space between the ends of said conveyers, means for operating said conveyers, means for operating said roll whereby the surface thereof will have a speed in excess of the running speed of said conveyers, and means for cleaning the surface of said roll*."

▮ We compare the two patents. The rule is "to sustain the charge of infringement the infringing device must be substantially identical with the one alleged to be infringed in (1) the result attained; (2) the means of attaining that result; and (3) the manner in which its different parts operate and co-operate to produce that result. If the devices are substantially different in either of these respects the charge of infringement is not sustained." Electric Protection Co. v. American Bank Protection Co. (C. C. A.) 184 F. 916,

923. See also McDonough v. Johnson-Wentworth Co. (C. C. A.) 30 F.(2d) 375. If there is infringement, then plaintiff's patent is anticipated and invalid for that reason.

Applying this rule to the facts of this case, we find that it is admitted that the result attained is the same in both plaintiff's and defendants' machine. So far as the means of attaining the result are concerned, both patents have a de-tailing rod which operates materially faster than the conveyers, and both rotate in the same direction that the belts are moved. The fact that one of the devices is called a roll and the other a rod is not significant. The actual difference in the two was at most only a very small fraction of an inch. The manner in which the different parts operate are substantially the same. The plaintiff makes much of the proposition that the Flynn device flips the tails off of the candy, while the Pagliuca machine wipes the tails from the confection. It should be noticed, however, that the specifications of plaintiff's patent, as well as those of defendants' patent, described the process as that of wiping. This so-called flipping process is alleged to be brought about in plaintiff's detailing rod because of its gyratory action. It is to be noticed, however, that this alleged characteristic was not claimed in plaintiff's original application for a patent, but first appeared by way of amendment. The amendment certainly did not change the device or the manner of its operation. This alleged gyral action is no more characteristic of plaintiff's device than of the defendants' de-tailing rod. In our opinion these two devices are so nearly the same that there cannot be said to be any substantial difference either in the means or manner of removing the tails formed on candy in the process of manufacture.

The plaintiff places great stress on the fact that the Pagliuca patent was not a commercial success. It was manufactured by the defendant equipment company and sold to a greater or lesser extent from 1919 until 1924. It is true that in many instances the de-tailing rod was removed and another rod substituted. Even though the Pagliuca patent was not a commercial success, it apparently reveals every element disclosed in plaintiff's patent. It accomplishes the same result, by the same means, in substantially the same manner. It was the original effort in this field. No prior patents covering this subject-matter have been called to our attention. It

is therefore entitled to the broadest possible construction, and it is not to be disregarded merely because it was not perfect. See Hildreth v. Mastoras, 257 U. S. 27, 42 S. Ct. 20, 66 L. Ed. 112; McDonough v. Johnson-Wentworth Co. (C. C. A. 8) 30 F.(2d) 375.

The plaintiff's patent is, we think, invalid because anticipated by the Pagliuca patent.

On the question of prior use the evidence disclosed that in 1922 the plaintiff, United Drug Company, had in its employ, in Boston, a man of the name of Wesley S. Swett. This man in that year called upon W. F. Schrafft & Sons, candy manufacturers, and installed de-tailers on twenty-five of its candy coating machines. These machines were manufactured by the National Equipment Company and were in use. Swett was paid $25 for each de-tailer installed. These de-tailing rods were composed of a shaft three-sixteenths inches in diameter, and they operated at a high speed and in the absence of any scraper such as was used in the original Pagliuca machine for removing chocolate from the rod. This de-tailing mechanism has been continually used in the Schrafft factory to the present time. Swett's de-tailing rod was then in use in plaintiff's factory both in Boston and in St. Louis, where Mr. Flynn, whose patent is here in suit, was employed.

Mr. Swett, in 1923, called upon the New England Confectionery Company in Boston and installed a small de-tailer on all of its enrobers and was paid $25 for each device. This was the same rod that was placed on the Schrafft machines. In the same year, 1923, Mr. Swett installed the same device on the enrobing machines used by Walter M. Lowney Company of Boston. This device was placed on the machines for the same consideration and is in use to this day. The plaintiff has admitted and asserted in this case that a three-sixteenths of an inch rod is within the requirements of the patent. The evidence of prior use is convincing that the device of the Flynn patent was known and used in the art for more than two years prior to his application and was used by others prior to his invention.

The plaintiff's bill will be dismissed. A decree for defendants on their counterclaim will be entered sustaining the Pagliuca patent and finding claims 1, 3, 10, 12, 14, 15, and 16 thereof infringed. Such a decree may be tendered.