## WILLIAMS v. HANDSCHIEGL.
### No. 2664.

Court of Customs and Patent Appeals.
April 15, 1931.

Interference proceedings between Frank D. Williams and Max Handschiegl. Decision for the latter, and the former appeals.

Affirmed.

Joseph W. Milburn, of Washington, D. C. (Joseph F. Westall and Ernest L. Wallace, both of Los Angeles, Cal., Roger D. Gessford, of Washington, D. C., and Westall & Wallace, of Los Angeles, Cal., of counsel), for appellant.

E. W. Shepard, of Washington, D. C. (Frank L. A. Graham, of Los Angeles, Cal., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner of interferences awarding priority of invention to the senior party, Max Handschiegl.

The invention relates to a method of producing composite pictures, and is fully described in the single count in issue. The count reads: "The herein described photographic method of producing composite pictures, which consists in photographing upon two strips of sensitized film a component object against a black background to produce a pair of matched photographed impressions, treating one of said strips to produce a silhouette of said component object thereon, projecting a supplemental object on the other strip of raw film through said silhouette film whereby the photographed impression is masked and the supplemental object is photographed on the raw film."

Appellee, Handschiegl, the senior party, filed his application on January 2, 1923.

Appellant, Williams, the junior party, filed his application on March 13, 1924.

Appellant filed a motion to dissolve the interference on the ground that appellee's application did not disclose an operative process.

Although the court is not favored with a copy of his decision, it appears from the record that the law examiner denied the motion to dissolve. Thereafter, appellant submitted considerable testimony for the purpose of establishing the inoperativeness of the method disclosed in appellee's application.

It is not contended here that appellant is entitled to an award of priority, if it should be held that the method disclosed in appellee's application is operative. On the contrary, counsel for appellant concedes that the issue of operativeness is the only one this court need consider.

Appellee stated in his specification that his method might be performed "with double camera arrangements, but I prefer in the practice of my invention to employ a single lens camera as indicated * * * and to run the films together, one placed upon the other. * * * In this manner, the light impression of the image passes through the film B and is received by the film A, an exact duplication and registering of the light impressions being thereupon obtained."

It is claimed by counsel for appellant that it is evident without experimentation that the Handschiegl method of using superposed film strips will not produce accurately matched photographed impressions; and that, if any portion of a "composite negative showed overlapping images or was bordered by an unexposed rim or apparent halation," it would be defective for both motion picture production and ordinary photographic work.

In his brief, counsel for appellant contends that the Handschiegl method of using superposed film strips is inoperative for the following reasons:

"As is well known, films used in photographic work are covered with a sensitized emulsion of yellow color and of such character that it is to a great extent impervious to light rays (Rec., pp. 101–102). In the first exposure made according to the Handschiegl method, the light rays which fix an impression of the object upon the sensitized coating of the front film must pass through the coating, as well as through the transparent but thicker celluloid base, in order to reach the sensitized coating of the rear film. Because of the diffusion of the light rays, the outline of the rear image will not be clearly defined. That the light rays will be deflected as well as diffused in thus passing through the front film is perfectly apparent, and requires no demonstration or argument. Due to the normal divergence of the light rays and their deflection by reason of the thickness of the film, the mask image of the object on the rear film will be larger than the image of the same object on the front film.

"The difference in the size of the images is made even more objectionable when the larger mask image is placed in front of the image upon the raw film in the succeeding step. The larger silhouette image, because of the divergence of the light rays, will mask a still larger area on the raw film. The final picture will consequently have a line about the image which will produce an apparent halation."

For the purpose of establishing the inoperativeness of the Handschiegl method, certain tests were made by experienced motion picture cameramen at the Metro-Goldwyn-Mayer studio, at Culver City, Cal., in the presence of the parties and their counsel.

The cameramen, Ray O. Binger, J. C. Smith and John J. Mescall, testified in substance that the results of the test indicated to them that the method of using superposed film strips would not be commercially successful in the production of motion pictures.

The witness Ray O. Binger said that he could not think of any condition during his experience in which the results obtained by the test in which he participated would benefit him to any extent.

The witness Smith, in concluding his testimony relative to the test, testified as follows: "Q. Do you consider the experiment a success in the results that you attempted to secure? A. For a commercial film, no."

The testimony of the witness Mescall was brief. After stating how the tests were performed and without describing the condition of the film after exposure, he testified as follows: "Q. Were the films in their finished condition a success for composite pictures? A. No."

Sydney D. Lund testified for appellant. He stated that he had been employed by appellant for about five years. He said that he had made several tests of the method of using superposed film strips, at the direction of appellant; that the method was not commercially successful; that he believed appellant wanted the tests made to show the Patent Office tribunals that the method described in appellee's specification was not commercially practicable; that he was present when the tests were made in the Metro-Goldwyn-Mayer studio; and that "the final negative was very poor in regards to being used for a commercial product due to the fact that the figure was very transparent when exposed on a background. Also as I stated before, had a bad black fringe all around the figures. I want to state that under no conditions could these pieces of film been finished to make a good looking commercial product."

In his decision, the examiner of interferences described the tests in considerable detail. He offered the suggestion that the criticism of appellee's method could be met by placing two sensitive surfaces in contact with each other, and that there was nothing in the record except a general statement by appellant to show that such a "face to face operation would be inoperative." He further called attention to the fact that the tests made at the studio were restricted to motion picture films. He then said:

"Even if the process of superposed films should be found inoperative for motion picture work it might be workable for still exposures.

"In the field of motion picture photography Williams has by no means demonstrated inoperativeness in the sense in which that word is used in patent law. * * *

"The only conclusion to be drawn from the testimony of these three photographers with respect to the Metro-Goldwyn-Mayer tests is that the Handschiegl superposed film process was not a commercial success for motion picture photography. Nothing can be concluded from these tests or from the testimony of the three photographers as to

whether the process might have been successful for still photography or as to whether it might have been operative in the patent sense for motion pictures. * * * It is altogether possible that the use of the process even in still pictures would require some touching. From this however, it can not be concluded that the process is inoperative for still photography or even that it is inoperative for motion picture work."

The examiner made no reference in his decision to the double camera arrangement mentioned in appellee's specification, but concluded his discussion of the issues in the case by holding that appellant had failed to prove conception of the invention prior to the filing date of appellee, and, accordingly, awarded priority of invention to appellee.

The Board of Appeals concluded that there was "strong doubt of the operativeness of the process if carried out by exposing the two films, one behind the other," and with reference to the operativeness of the Handschiegl method for still pictures said: "Both applications state that their object is to produce motion picture films and we have no information as to whether the results would be useful in still pictures."

Thereupon, the board referred to the double camera arrangement mentioned in appellee's specification, called attention to the fact that appellee did not intend to be confined to any specific way for making the "two negatives," and stated that if there were any means known to those skilled in the art for carrying out appellee's process, it could not be held to be inoperative. It then said: "There is in Class 95, Photography, a subclass 18, Cameras, Simultaneous Exposure, in which there are many patents disclosing cameras for this purpose. We call attention to a few which were selected to show a construction similar to that disclosed diagrammatically in the Williams application, see Brewster, No. 1,222,925, April 17, 1917, Ives, No. 475,084, May 17, 1892, and Ives, No. 703,929, July 1, 1902. It is evident that when the negatives are taken in these cameras one of them would be as well exposed as the other and the method could be carried out without difficulty. We must therefore hold that Handschiegl's process is not inoperative and as Williams has failed to overcome his filing date for either conception or reduction to practice, we affirm the decision of the Examiner of Interferences and award priority of invention to Max Handschiegl, the senior party."

After giving careful consideration to the testimony, we are in accord with the views expressed by the examiner of interferences that the witnesses who were present and participated in the tests at the studio intended to be understood as saying that from the results produced by the tests there made, the method of using superposed film strips was not a commercial success in the production of motion pictures. Lund and Smith both testified squarely to that effect. Binger confined his observations to the proposition that he did not see how the method would be helpful to him. Mescall, alone, testified that the test convinced him that the method was not a success for making composite pictures.

It was incumbent upon appellant to establish that appellee's method of using superposed film strips in the production of composite pictures would not actually perform the functions claimed for it. Proof that it is imperfect in operation, that it performs its functions in a crude way, or that it does not meet commercial requirements, is not sufficient to establish inoperativeness in a patentable sense. Hildreth v. Mastoras, 257 U. S. 27, 42 S. Ct. 20, 66 L. Ed. 112.

Furthermore, all of the testimony relating to the tests was limited to the use of the method in the production of motion pictures. There is no testimony in the record to show that the method would not be successful in the production of so-called still pictures.

It is contended by counsel for appellant, and it was suggested in the decision of the Board of Appeals, that the count in issue is limited to a method of producing motion pictures. In our opinion, the count is not so limited. Appellant stated in his specification that "this invention relates to a process of producing composite pictures whereby two objects may be photographed and superimposed to produce in effect, a unitary picture."

Counsel for appellant also contends that appellee's disclosure of double camera arrangements is vague and insufficient, and that, as the patents referred to in the decision of the Board of Appeals were not introduced in evidence, the board had no authority to consider them for the purpose of supplementing appellee's disclosure. Holding the views hereinbefore expressed, it is unnecessary for us to consider this issue.

We are in accord with the conclusion reached by the Board of Appeals, and its decision is affirmed.

Affirmed.