**LEVINE v. COE, Commissioner of Patents, et al.**

**No. 7476.**

United States Court of Appeals for the District of Columbia.

Decided Feb. 17, 1941.

Petition for Rehearing Denied March 19, 1941.

Edward W. Shepard, of Washington, D. C., Hugh M. Morris and Alexander L. Nichols, both of Wilmington, Del., and George R. Ericson, of St. Louis, Mo., for appellant.

W. W. Cochran and H. S. Mackey, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The appeal is from dismissal of the complaint to authorize issuance of a patent, pursuant to Rev.Stat. § 4915, 35 U.S.C. § 63, 35 U.S.C.A. § 63, on certain claims relating to an automatic choke valve for automobile carburetors. The Patent Office and the trial court held that the claims in issue were anticipated by a patent (No. 1,945,191) issued to Hunt in January, 1934, pursuant to an application filed on May 4, 1931. Hunt's claims which are said to anticipate plaintiff's were contained in an amendment to his application filed February 10, 1933. Plaintiff's application was filed November 17, 1931, but the present claims were not included until December 9, 1935, when an amendment was filed with these claims copied from the Hunt patent. Plaintiff contends that the patent was improperly granted Hunt as to these claims for the reason that they are not supported by his original disclosure. This presents the sole issue on the appeal.

The typical claim in issue describes a carburetor with " * * * a pressure responsive choke valve, temperature responsive means yieldingly urging the valve toward closed position and rendered inoperative at high temperatures, and means responsive to suction posterior to the throttle for moving the valve to a partially opened position against the force of the temperature responsive means." It is not questioned that plaintiff's disclosure supports this description. On one side plaintiff's valve is attached to a bi-metallic thermostat in the form of a coil spring which at low temperature holds the valve "yieldingly" closed. On the other side the valve is attached to a small piston. When the motor starts, the suction created in the manifold moves the piston, forcing the valve open against the resistance of the thermostat on the other side. As the motor becomes warm the thermostat coils up until eventually it offers no resistance to the open position of the valve.

The important question is whether Hunt's disclosure supports the claims. Only one of the embodiments of Hunt's valve, that contained in Figure 7 of his application, is relied upon by defendant as antici-

186

pating plaintiff's claims. Figure 7 shows a valve connected on one side (somewhat less directly than plaintiff's) to a cam controlled by a thermostat, and on the other side, through levers and a toggle-joint, to a sylphon bellows. It appears that initially Hunt's choke valve is held closed by a spring. As the spring is not sufficiently strong to hold the valve in closed position during the cranking operation, Hunt added the toggle-joint and bellows to furnish added resistance to opening at that time. Prior to starting, the bellows is in relaxed position and the toggle-joint is approximately straight, thus tending to lock or "latch" the valve. When the motor starts suction is produced which causes the bellows to contract, thus breaking the straight-line position of the toggle. Defendant says this action of the bellows also operates through the toggle and levers to open the valve partially. When the resistance of the toggle is released, the force of air against the valve opens it 10 or 15 degrees against the resistance of the spring. The valve then comes in contact with a lever connected with the thermostatically controlled cam. As the motor becomes warm the. thermostat expands, causing the cam to rotate, moving the lever and opening the valve. As the motor cools the thermostat contracts, the cam rotates in the opposite direction, thus releasing the lever connected with the valve and, apparently, permitting the spring to restore the valve to closed position.

■ It is to be remembered that the claims in issue were drawn originally to describe Hunt's, not plaintiff's, device. Plaintiff contends they do not do so in two principal respects: (1) the "temperature responsive means" does not yieldingly urge the valve toward closed position; (2) the sylphon bellows is not "for moving the valve to a partially opened position against the force of the temperature responsive means." We do not find that the Patent Office and the District Court were wrong in their rulings on these contentions, and therefore we must affirm the judgment. Abbott v. Coe, 1939, 71 App.D.C. 195, 109 F.2d 449.

■■ Plaintiff says that the "temperature responsive means" does not urge the valve toward closed position, but that this function is performed by the spring. The examiner found that "Hunt's thermostat is itself a yielding means and that it operates through spring 67, another yielding means, to urge the valve toward closed position." Thus the "means" employed by Hunt to "urge the valve toward closed position" includes not only the thermostat, which is directly responsive to heat, but also the cam and the spring through which it operates to close the valve. The combined "means" is "temperature responsive," is yielding, and urges the valve to closed position. This part of the description is met fully by Hunt's specification.

Plaintiff contends that the sole purpose of the sylphon bellows, levers and toggle-joint is to provide added resistance to the valve's opening during the cranking operation and to release it when the motor starts, not to move the valve to a partially opened position. It apparently is true that Hunt adopted the toggle and bellows for the former purpose, and did not consider important (or perhaps realize at first) that the device would also have the effect later claimed. But by 1933 Hunt or his assignee recognized what the Patent Office and the trial court have found to be true, that the device would also partially open the valve. It is not suggested that the new claims made then, if supported by the original disclosure, are not valid as they would have been had they been included in the application of 1931. If, therefore, the claimed function existed in the original specification, though not expressly described there, Hunt's claims are valid and plaintiff's are anticipated.

Much has been said in briefs and argument concerning the fact that Figure 7 describes an inoperative device, i. e., if bellows and levers on the scale pictured were used the device would not work. However, it is conceded that "a patent drawing is not required to be an exact working drawing" and that the "manifest imperfection of the device * * * might be cured." Plaintiff says that the "fundamental question * * * is whether the claims in issue would be readable upon the device as shown in Figure 7 of the Hunt patent, assuming that that device is operative in precise accordance with the description, specification and teaching of the Hunt patent." Accepting this statement of the issue, it seems that there is adequate evidence in the record from which the trial court could have found that an operative bellows and toggle device would open the valve partially. Hunt, who was not a hostile witness, so testified,

as did other witnesses. Apparently it was recognized by the witnesses that such a means of opening the valve is not practical since a bellows of reasonable size would open the valve only slightly. It also appears that though the bellows could open the valve partially, the chief force causing it to open, and the force subjectively contemplated by Hunt in his original disclosure, was that of the rush of air induced by the starting of the motor. The fact remains that appellant's claims call for only a partial opening of the valve by the "means responsive to suction," and it appears from the evidence that such a function is performed by Hunt's device. It is not essential that this function of Hunt's patent be entirely practical or successful commercially. Hildreth v. Mastoras, 1921, 257 U.S. 27, 42 S.Ct. 20, 66 L.Ed. 112; Williams v. Handschiegl, Cust. & Pat.App. 1931, 48 F.2d 395. The patent is nevertheless valid as to this function, and it is anticipatory of the claims sought to be made by plaintiff.

Plaintiff also argues that whatever opening of the valve is accomplished by the bellows must be against the tension of the spring, not "against the force of the temperature responsive means." What has been said above to the effect that the thermostat, cam, lever and spring together constitute the "temperature responsive means" should be sufficient answer for this argument. But in any event we think the trial court might well have inferred from the evidence, since there is nothing to contradict the inference, that the bellows would open the valve to the point where the thermostatically controlled cam and lever would furnish direct resistance to further opening, though the initial resistance might be provided solely by the spring.

We think therefore that the conclusion of the Patent Office and the District Court that these claims are supported by Hunt's disclosure is based on substantial evidence.

The judgment is affirmed.