## HARRIS v. WASHINGTON SHIRT CO.
### No. 4753.

District Court, W. D. Missouri, W. D.

Aug. 9, 1948.

Inghram D. Hook, of Kansas City, Mo., for plaintiff.

Thomas E. Scofield, of Kansas City, Mo., for defendant.

DUNCAN, District Judge.

Plaintiff, a resident of Kansas City, Missouri, instituted this suit against defendant, a Deleware corporation, doing business in Kansas City, Missouri, charging infringement of Weaver Patent No. 2,304,

043, granted December 1, 1942, and Harris Patent No. 2,332,379, granted October 19, 1943, through the sale by defendant in this district of a hand-operated dry shaving device known as "Vestpok" Dry Shaver. The device is manufactured by Ward Machine Company of Brockton, Massachusetts, pursuant to a license granted by Ralph G. Arey, owner of patent No. 2,331, 646, issued to him on October 12, 1943, assignee of Lundquist No. 2,335,288, issued on November 10, 1943, owner of Arey No. 2,354,657, granted August 1, 1944, and owner of application No. 650, 849, filed February 28, 1946, by Arey. The application covers the accused device which was sold by defendant. The action is being defended by the Ward Machine Company, the defendant here being its sales agent only.

It is admitted that plaintiff is the owner of the patents sued on. The claims of the Weaver Patent in suit are 6, 7, 8, 10, 11 and 12, and of the Harris Patent the claims are 1, 2, 10, 11, 12, and 14. The device or devices described in plaintiff's patents have not been commercially manufactured and placed on the market and for the purposes of this suit must be considered as paper patents and given the restricted construction which the law ·places upon patents which have not progressed beyond the *drawing* and *descriptive* and *claims* stage. On the other hand, about 175,000 of the accused device have been sold and several hundred thousand dollars expended in manufacturing and sales promotion. However, models of plaintiff's patents, not precision made it is true, but accurately made in accordance with the specifications of the various patents are before the Court for examination, comparison and experimentation.

The recognized success of electrically operated dry shavers apparently inspired the inventors to produce a hand-operated dry shaver and in working out their ideas they adopted many of the elements which had long been used in the electric shavers. The idea of the form of the elements and their functions as found in the electric shaver apparently impressed themselves very vividly upon the minds of the early inventors.

The first hand-operated dry shaver is shown in Patent No. 2,120,239, issued to Burgeson on June 14, 1938, pursuant to application filed April 20, 1937. This device consisted of a cylindrical outer cutter or sleeve which was rotated by traction upon the face and in turn rotated an inner cylindrical cutter in reverse direction by means of contacting gears. The outer cylinder or sleeve was perforated and into these perforations it was intended that the hairs should enter and be cut or sheared by the pressure of oppositely revolving contacting elements.

Within a comparatively short period of time thereafter six other inventors filed applications for patents for hand-operated dry shavers. These were Weaver and Harris, in suit here, Dalkowitz, McClure, Nyhagen and Lundquist (owned by Arey by assignment). This resulted in a Patent Office Interference in which all of the applicants were involved. The Interference was won by Weaver because of the earlier filing date, July 26, 1938. Later Harris acquired the Weaver patent for $300. As a result of the interference many changes and additions and eliminations of claims were made in the applications of the various applicants. The Weaver patent, in suit, had a rotating outer cylinder perforated as in Burgeson and in electric shavers, for the reception of the hairs and an inner *fixed* cylinder with diagonal slots with sharpened edges. It was intended that the whiskers should enter the perforations in the outer cylinder and then into the slots of the inner cylinder which was *fixed* and *immovable* by reason of being secured to a handle on each end, thus causing them to be sheared or cut off, as the shaver was rotated over the face. Neither the edges of the perforation of the thin outer sleeve or cylinder or the squarely ground edges of the diagonal slots in the inner cylinder were *cutting* edges of themselves. It required the combined effort of both, one fixed and the other moving, pressing against the hair or hairs which had entered the perforations and the slots.

The Harris patent was granted subsequent to the conclusion of the Interference in the Patent Office and after making required changes in the claims, but it was quite similar to the Weaver patent in its specifications and claims. It, too, provides for an outer rotating cylinder or sleeve, perforated as in Weaver and Burgeson, to revolve, upon pressure on the face, around a fixed inner cylindrical stator having an axial bore and longitudinal slot and blade assembly mounted therein, including a channel-like cutter having cutting edges and a cylindrical spring.

It will be seen here that the only difference between Weaver and Harris lies in the cutting or shearing element. The outer perforated sleeves are identical. The inner fixed cylinders are different only in that in Weaver there are diagonally cut slots in the hollow, inner, fixed cylinder, ground so that the edges thereof were to assist the rotating sleeve to effect the severing of all whiskers entrapped between them. In the Harris patent we start with the same inner fixed cylinder or stator as it is described in Weaver, but instead of having diagonal slots with squarely cut edges to assist in severing hairs we have what is described as "axial bores," and a "longitudinal slot" and a blade assembly mounted therein. I think it might be more simply described by saying that it is a small cylinder about one inch long by three-eighths inch thick with grooves cut around it approximately 1/8 inch apart and 1/16 inch deep. A U-shaped slot is cut the entire length of the cylinder and into this slot is placed a cylindrical spring and upon the spring in the slot is inserted a U-shaped cutting device with sharpened edges. The spring presses the cutting edges of the cutting device and the inner edges of the perforated revolving cylinder together so that hairs entering the perforations and coming into contact with the cutter are severed. Both the cylinder and the cutting blades in Harris are *fixed*.

While the specifications call for cutting edges to be sharpened, they are not sharpened to a hair cutting edge, nor are the perforated edges of the rotating cylinder sharp enough to cut hairs. The severance must be by pressing the two elements together with such force as to sever or shear the hairs caught between them.

It is not necessary, I think, to discuss each of the six claims of the Harris patent and the six claims of the Weaver patent in relation to the accused device. It would be repetitious. In each of the claims in each of the patents the inner cylinder and the cutting device, whether such device be a part of the cylinder itself as in Weaver or is fitted into the *fixed* cylinder as in Harris, are *fixed* and immovable. And when the claims are read in connection with the specifications and compared with the drawings no conclusion except that they are fixed and immovable can be reached.

I also feel that a careful reading of the claims and specifications, a study of the drawings, and observation and examination of the models in evidence can leave no doubt that the severance of the whiskers is by the *shearing* method rather than by the cutting method, and I think it is in this respect that the accused device and plaintiff's patents differ.

We will now analyze and discuss the Arey patents and the accused device. At the time of the Interference Arey was owner of the Lundquist Patent No. 2,335,288, filed November 1, 1939, and granted November 30, 1943. Apparently there is little difference between this patent and the Harris patent, perhaps the difference between tweedledum and tweedledee; yet, a patent was granted to Arey, with the same rotating perforated outer cylinder and inner fixed cutting element or shearing device effected by pressure of the two elements brought about by friction. Arey never produced this device for commerce. He testified that he found from experimentation that a shearing type shaver was "inoperative" because it lacked sufficient power from rotating it over the face to severe whiskers and for that reason he began the study of a "shaving type" of dry shaver but having a "fixed" two-edged razor blade attached to a fixed inner cylinder described and used in all the other patents on dry shavers. This study resulted in Arey Patent No. 2,354,657, filed August 27, 1940, and granted August 1, 1944. This shaver was like all the others except that it had a two-edged cutting blade designed to *cut* rather than *shear*. It too had a fixed blade.

Arey manufactured this shaver and sold about 50,000 under the trade name of "Vestpok" between 1940 and 1943. The war interrupted its manufacture and he ceased. This shaver is not now being manufactured and is not on the market and we are concerned with it here only incidentally. If the device manufactured under Arey Patent No. 2,354,657 were being charged here with being the infringing device, rather than the device now being manufactured and sold, it is my view that it would infringe the Harris patent, assuming for the sake of this statement *only* the validity of the Harris patent. Apparently Arey entertained the same view because during the manufacture and sale of "Vestpok" made under the Arey patent, much correspondence was had and some conferences were held respecting a license from Harris to Arey to manufacture and sell under Arey patent No. 2,354,657, and plaintiff apparently relies upon these facts to show an admission of the similarity of the patents and the infringement of plaintiff's patents by the accused device. The court is considerably impressed with the accusation, at least by implication, of unfair dealing on the part of Arey with Harris relative to this phase of their relationship. Apparently Arey "stalled" Harris along so long as he felt the Vestpok he was then manufacturing might infringe the Harris patent, but suddenly he discovered the new device—now the accused—which he was advised did not infringe the Harris patent and he suddenly broke off negotiations without explanation as to why he was doing so and began to manufacture the new device through a license to the Ward Company. The court here, however, is not concerned with business ethics or the fairness or unfairness of the parties' dealings but only with the question, "Does the accused device infringe plaintiff's patents?"

The application for a patent on the accused device was filed by Arey on February 28, 1946, and at the time of the trial the patent had not been granted.

In his application he describes the difficulties experienced with the fixed type of cutting device resulting from pulling hairs and describes his new design as avoid-

ing that difficulty, this difficulty having been experienced by him with the Vestpok manufactured under Arey No. 2,354,657. In his new device, according to his application, he claims to have solved this difficulty by providing for a moving or oscillating blade which moves or oscillates as the rotating cylinder moves over the face. In most respects the shaver is like all the others from Burgeson on. It has a perforated, thin, brass sleeve which rotates around an inner cylinder secured or *fixed* to a frame. The whiskers enter the perforations which are not sharp enough to cut, just as in all the shavers described in the various other patents. The distinction here, as it was between Weaver and Harris, is in the inner cutting element. The cylinder is the same size and shape as the others. There are corrugated grooves similar to Harris, but instead of having a fixed cutting element as in Harris the accused device has a longitudinal V-shaped slot or channel into which is placed a T-shaped cutting blade. The stem of the T fits into the V-shaped slot or groove and the cross of the T composes the cutting edges which are ground to razor sharpness and so beveled that their contact with the inner wall of the rotating outer sleeve is at the top of the bevel and not at the cutting edge. As the sleeve rotates from its contact with the skin of the face, back and forth, the blade oscillates with the movement of the sleeve. Immediately upon changing the direction of the rotating sleeve the oscillating blade changes. Thus instead of having a *fixed* blade or cutting device as in Weaver, Harris, and Nyhagen, all of which were shearing devices, we have a loose, flexible, oscillating or swinging blade, sharpened to a razor edge for cutting.

Plaintiff contends that there is no difference between the devices and that the description of the accused device and the claims in respect thereto read on 6, 7, 8, 10, 11 and 12 of the Weaver patent and on 1, 2, 10, 11, 12 and 14 of the Harris patent. Plaintiff contends that the accused device, too, employs a shearing method. Plaintiff contends that there is no distinction between the cutting elements of the various devices, that whether they are cutting or shearing devices, they perform the same

function in the same manner and are, therefore, the same device. With that contention I cannot agree.

Plaintiff insisted that the blade, although sharp, is not sufficiently large and strong to cut hairs without some assistance from the cooperating member, the rotating cylinder. To some extent I agree with this contention but not entirely. While it is true that the cutting blades in the accused device will cut hairs without a supporting element, they like any other razor blade, except the old-fashioned straight-edge razor, will not perform the operation satisfactorily without some support. But certainly it is a different method of severing than that employed by the shearing devices, neither element of which is sharp enough to cut hairs and must depend upon pressure one against the other to sever the hairs.

■ Defendant contends that the Weaver and Harris patents are mere reversals of parts, over past art electrically operated dry shavers and that they are "invalid for lack of invention because seven men conceived the same broad idea almost simultaneously in 1937 and 1938," and further that they "are invalid because inoperative and lacking in utility." Much of the testimony concerned the questions of validity. Both of these patents were involved in the six-man interference before the Patent Office and following that proceeding patents were duly issued, and while the action in this respect is not binding upon the court it is entitled to great weight, more than in the ordinary case, in determining validity of such patents as were involved in the Interference. Hildreth v. Mastoras, 257 U.S. 27, 42 S.Ct. 20, 66 L.Ed. 112.

■■ Much testimony was presented by both sides concerning the question of whether the patents were operative or lacking in utility. As heretofore stated plaintiff's patents are paper patents; they have never been produced commercially. The models before the court are not perfect, although reasonably accurate. Very frankly there is some doubt in my mind as to whether the patents are operative, but even if it were essential to a determination of the issue here, I should feel a hesitancy in judicially condemning them as inoperative

without a more thorough trial; but in view of the finding that there is no infringement I see no reason to determine the question of validity of plaintiff's patents. On the other hand I am convinced that the accused device does possess utility and is useful within the scope of usefulness of a hand-operated dry shaver, which, I think it is not seriously contended, may be pretty much limited to the removal of the "five o'clock shadow" in a simple, expeditious, reasonably satisfactory manner. I think the oscillating or swinging, sharpened cutting blade, which may be readily replaced when dull, definitely distinguished the accused device from plaintiff's patents; and whether the use of the swinging cutting blade was the "last step" it was at least a very long step in bringing hand operated dry shavers from a state of doubtful utility to one of at least reasonable usefulness.

In view of the foregoing it is my opinion that the accused device does not infringe plaintiff's patents, and plaintiff's complaint should be dismissed.

It is so ordered.